**CITY OF WILLIAMS, et al., Plaintiffs,**

v.

**Michael DOMBECK, et al., Defendants.**

**Civ.A. No. 00–0066(CKK).**

United States District Court,
District of Columbia.

March 30, 2001.

Geraldine Edens, Cadwalader, Wickersham & Taft, Washington, DC, for plaintiffs.

Wells Daniels Burgess, Albert C. Lin, U.S. Department of Justice, Environment & Natural Resources Division, Jay Kelly Wright, Arnold & Porter, Washington, DC, for defendants.

David H. Getches, Boulder, CO, Harry Rubenstein Sachse, Sonosky, Chambers, Sachse & Endreson, Washington, DC, for movants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

This case comes before the Court on Plaintiffs' motion to amend their Complaint. Defendants and Defendant/Intervenor (collectively Defendants) oppose such motion on the grounds that, *inter alia,* Defendants will suffer undue prejudice, the proposed amendments are untimely, and the amendments add claims which are only tangentially related to the original claims. Having considered Plaintiffs' motion, Defendants' opposition, Plaintiffs' reply, and Defendants' surreply, the Court shall deny Plaintiffs' motion.

## I. BACKGROUND

Plaintiffs filed an eight count Complaint in the current action on January 11, 2000. The Complaint requests declaratory and injunctive relief against the Forest Service for alleged violations of the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C. § 4321 *et seq.,* and the Federal Land Policy and Exchange Management Act (FLPMA), 43 U.S.C. § 1701 *et seq.* By its own terms, the action:

> challenges the Record of Decision (the "Decision") issued by the Forest Service on the Final Environmental Impact Statement ("FEIS") for Tusayan Growth Coconino County, Arizona, issued August 6, 1999.... The Decision authorizes the Forest Service to convey 272 acres of National Forest Service land ("NFS land") located in the Kaibab National Forest between the community of Tusayan, Arizona and the South Rim entrance to the Grand Canyon National Park ("GCNP") to [Defendant/Intervenor Canyon Forest Village

II Corp. (CFV) ] in exchange for 12 private inholdings totaling approximately 2,118 acres.

Complaint at 3. Throughout their Complaint, Plaintiffs describe and attack "the Forest Service's decision" to exchange, construct, or develop the land in question. *See generally* Complaint. Counts I and II of the Complaint arise under the FPLMA and challenge the Forest Service's conclusions that the proposed land exchange complies with the value requirements set forth in 43 U.S.C. § 1716(b) and will serve the public interest as required by 43 U.S.C. § 1716(a). Compl. ¶¶ 95–110. Counts III through VI challenge the sufficiency of the NEPA study conducted by the Forest Service. Compl. ¶¶ 111–144. Count VII challenges the sufficiency of the appeals process, alleging that the Regional Forester failed to engage in a meaningful discussion of the issues on appeal. Compl. ¶¶ 145–151. Count VIII requests injunctive relief to prevent the land exchange from occurring. Compl. ¶¶ 152–156.

Plaintiffs seek leave to amend their Complaint to correct the name of a Plaintiff, and to add additional party defendants, factual allegations, and two causes of action against these additional defendants. Pl. Mot. to Amend. at 1. Specifically, Plaintiffs propose to:

> add Bruce Babbitt, in his capacity as Secretary of the Department of the Interior, Robert G. Stanton, in his capacity as Director of the National Park Service, and Robert Arnberger, in his capacity as Superintendent of Grand Canyon National Park, as additional party defendants ... add[ ] factual allegations and two claims for declaratory relief against these defendants.

Pl. Mem. in Supp. of Mot. to Amend. (Pl. Mem.) at 1. Plaintiffs concede that the additional allegations against the new defendants concern "separate" decisions from those challenged in the original Complaint. *Id.* at 2. However, Plaintiffs assert that these separate decisions are "interrelated" in that the Park Service chose to "couple its parking plan with the proposed land exchange CFV

was negotiating with the Forest Service." *Id.*

■ Rule 15(a) of the Federal Rules of Civil Procedures states in relevant part that "a party may amend his pleadings only by leave of the court" and that leave "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). "It is within the sound discretion of the district court to decide whether to grant such leave." *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.* 810 F.2d 243, 247 (D.C.Cir.1987). The D.C. Circuit has held in general terms that denial of leave to amend is appropriate if the amendment would result in delay or undue prejudice to the opposing party, or if a party has had sufficient opportunity to state a claim and has failed to do so. *Id.*

Again, Plaintiffs proposed amended complaint seeks to (1) correct the name of a Plaintiff as the real party in interest, (2) add additional factual allegations, and (3) add additional claims against additional defendants based on the new factual allegations. *See* Pl. Mot. to Amend. at 1. There is little to say about the first request, *i.e.*, Defendants do not oppose this minor amendment, Def. Opp. ay 9 n. 8, nor can the Court identify any prejudice that might result from such amendment. Accordingly, the Court shall grant leave to amend with regard to the correction of the name of an already identified Plaintiff. The analysis is not quite so simple with regard to Plaintiffs' latter two bases for amendment.

■ As an initial matter, Defendants vehemently object to the addition of new claims against new parties arguing that they, the current Defendants, will be prejudiced by such amendment. The Court agrees. Plaintiffs' motion to amend was filed a scant twelve days before briefing on cross-motions for summary judgment commenced. Of course, the summary judgment motions do not address the additional claims Plaintiffs seek to introduce. At present, the Court has resolved the motions for summary judgment, and in doing so, has resolved all currently pending claims in this case. Thus, to grant Plaintiffs' motion would delay resolution of the case, as additional time would be needed to compile the administrative record of the

alleged Park Service's action. In addition, if Plaintiffs seek discovery related to these new claims, as they did with regard to the original claims, such discovery, if allowed, could further delay proceedings. Ultimately, resolution of these new claims will likely require yet another round of cross-motions for summary judgment. Given these considerations, the prejudice to Defendants is clear, particularly in light of the fact that, in its present posture, the summary judgment motions are not only ripe, but have been resolved.[1]

In response, Plaintiffs assert that they will have no adequate remedy against the Park Service if required to file a separate action to bring their additional claims because the remedy Plaintiffs seek, to enjoin the transfer of title between the Forest Service and CFV, will be unavailable Pl. Opp. at 6. The clear facts of the case belie this assertion. As explained more thoroughly in the "Background" section of the Court's companion Memorandum Opinion in this case, incorporated herein by reference, the earliest date upon which title between CFV and the Forest Service may transfer is November 7, 2001. *See City of Williams, Arizona v. Dombeck,* 151 F.Supp.2d 9 (D.D.C. 2001) (Memorandum Opinion granting summary judgment in favor of Defendants, in part, and in favor of Plaintiffs, in part).[2] Thus, a denial of Plaintiffs' motion to amend, which effec-

---

1. Similar delay would have been incurred even if the Court had resolved Plaintiffs' motion to amend prior to resolving the summary judgment motions because the parties would have had to either supplement those summary judgment motions or file entirely new motions and memoranda relating to the additional claims. Such supplementation or additional filings would likely have been delayed further by the filing of a motion to dismiss the additional claims or the filing of a request for discovery.

2. The "Background" section in the Court's companion Memorandum Opinion provides in full:

Tusayan, Arizona is an unincorporated community of 144 acres in Coconino County that is surrounded by Kaibab National Forest. Compl. ¶ 29. Because Tusayan is located one mile south of Grand Canyon National Park, many National Park visitors use the Tusayan facilities while visiting the National Park. *Id.* ¶¶ 29, 30. In order to accommodate these visitors, the United States Forest Service created a Final Environmental Impact Statement ("FEIS") to evaluate the impact of various proposals to improve the Tusayan facilities. *Id.* ¶ 30. The FEIS focused on expanding the community by obtaining some of the 12 parcels of land in Kaibab National Forest, which are owned by Canyon Forest Village II Corporation ("CFV") and are surrounded by National Forest Service ("NFS") land. FEIS at 1. At least three of these parcels were considered "likely candidates for development." *Id.* Thus, the Forest Service sought to develop some sort of planned exchange and development to prevent the piecemeal development of parcels within the Kaibab National Forest that would likely have a negative impact on NFS land. *Id.*

In particular, the Forest Service studied eight alternatives that evaluated whether the Forest Service should use the National Forest Service land to expand the Tusayan community. Compl. ¶ 31. The alternatives varied as to quantity and location of the land which could potentially be used for the development and expansion. *Id.* ¶ 30. After scrutinizing all of the alternatives, the Forest Service chose to implement Alternative H. *Id.* ¶¶ 32, 33. Alternative H, which was created by CFV, proposed a land transaction between the Forest Service and CFV, with the Forest Service providing 272 acres of NFS land located north of Tusayan to CFV in exchange for twelve inholdings totaling approximately 2,118 acres. *Id.* ¶ 39. With the land it receives under this exchange, CFV proposes to construct a large shopping center, consisting of hotel, retail, food and beverage, and office space. *Id.* ¶ 40. The Forest Service chose this alternative because it determined that Alternative H served the public interest and met the objectives set forth in the Forest Plan. *Id.* ¶ 33.

The Plaintiffs in this case—two municipal corporations, a non-profit corporation, a limited liability company, and several individuals residing in or near Tusayan—have filed suit under the Administrative Procedure Act seeking judicial review of the Forest Service's decision to proceed with Alternative H. *Id.* ¶¶ 3-28. The Plaintiffs claim that the selection of Alternative H violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* and the Federal Land Policy Exchange Management Act ("FLPMA"), 43 U.S.C. § 1701 *et seq. Id.* ¶¶ 92-156. CFV has been permitted to intervene in this action. *See City of Williams, Arizona v. Dombeck,* No. 00-66 (D.D.C. August 17, 2000) (order granting CFV's motion to intervene).

On March 15, 2000, the County Board of Supervisors for Coconino County approved a CFV-requested zoning ordinance. However, "the ordinance and the land transfer ... was [sic] stayed pending a referendum held in Coconino County on November 7, 2000." Pl. Supp. Reply Mem. in Supp. of Cross Mot. for Sum. J. (Pl.Supp.Reply.) at 1. The November 7, 2000, referendum stated that the ordinance "amend[ed] the county zoning map on application of the U.S. Forest Service by [CFV] for a zone change from 'open space' to 'planned community' on 272 acres located south of the Grand Canyon, allowing lodging, retail, employee housing, and community facility uses, with 63 condi-

tively requires Plaintiffs to file a separate action will not result in the prejudice which Plaintiffs fear. Accordingly, the Court finds that Plaintiffs' motion to amend should be denied on the grounds that amendment will unduly prejudice Defendants.

In addition, it appears that the claims Plaintiffs seek to add are largely unrelated to the claims currently before the Court. The allegations in Plaintiffs' original Complaint challenge the Forest Service's 1999 decision to proceed with a land exchange and development. *See generally*, Complaint. The new allegations in Plaintiffs' proposed amended complaint challenge an alleged decision by the Park Service five years earlier, in 1994, regarding which objectives and considerations it would include in the 1995 General Management Plan for the Grand Canyon. *See* Pl. Reply at 2. As challenges to agency actions, both Plaintiffs' new and old claims depend upon an assertion that there has been some "final agency action" which violates statute or regulation. Strikingly, the relevant "final agency action[s]" for each set of claims involve different actions, taken at different times, by different agencies. Thus, while the Court agrees with Plaintiffs that the challenged Park Service action is "separate" from the challenged Forest Service action, it rejects the assertion these separate actions are necessarily "interrelated." Pl. Mem. at 2.

■ In the Court's view, the additional claims set forth in the proposed amended complaint are only tangentially related to the claims in the original case. In this regard, Plaintiffs' request to amend differs from other cases where leave to amend has been granted in that the amended complaint has related in a substantive way to the original complaint. *See Mississippi Ass'n of Cooperatives v. Farmers Home Admin.*, 139 F.R.D. 542, 544 (D.D.C.1991). In cases where the complaint, as amended, bears no more than a tangential relationship to the original action, it is within the Court's discretion to deny leave to amend. *See National Treasury Employees Union v. Helfer*, 53 F.3d 1289, 1295 (D.C.Cir.1995). Thus, denial of amendment is proper here for the additional reason that Plaintiffs' new claims are only tangentially related to the claims in the original Complaint.

Denial of leave to amend in this case does not contradict the intent behind the liberal amendment rule—that leave to amend should be granted liberally in order to ensure that litigants have their day in court. Rather, Plaintiffs in the instant case can readily file their claims against the Park Service in a separate action. In contrast, to allow amendment at this time would protract this litigation and thus, prejudice Defendants. Accordingly, the Court denies Plaintiffs' motion for leave to amend.[3] An appropriate

---

tions." *Id.* at 2 (quoting Sample Ballot, Ex. A). The ballot further stated:

A "Yes" vote shall have the effect of ALLOWING the Canyon Forest Village development on the subject property as approved by the County Board of Supervisors.

A "No" vote shall have the effect of REJECTING the rezoning request as approved by the County Board of Supervisors and retaining the "open space" designation for the subject property.

*Id.* (quoting Sample Ballot, Ex. A). The certified results of the above-described referendum ballot show that "No" defeated "Yes" by a total of 24, 417 to 13, 817 votes. *Id.* (citing Ex. B). "As a result, the Board of Supervisor's decision has been invalidated and there is no zoning for any aspect of the lands encompassed by Alternative H other than as 'open space.'" *Id.* Coconino County Zoning Ordinances prohibit CFV from seeking rezoning on the same parcel for at least one year following the denial by the voters. *Id.* (citing Coconino Zoning Ordinance § 19.4–12).

*City of Williams, Arizona v. Dombeck*, 151 F.Supp.2d 9 (D.D.C.2001) (Memorandum Opinion granting summary judgment in favor of Defendants, in part, and in favor of Plaintiffs, in part).

3. The Court notes that in their opposition to Plaintiffs' motion, Defendants assert that amendment would be futile because Plaintiffs' additional claims would be subject to dismissal. Specifically, Defendants argue that Plaintiffs' additional claims should be dismissed because Plaintiffs have failed to exhaust their administrative remedies and because Plaintiffs' new claims are barred by the six year statute of limitations. Without addressing the merits of this assertion, the Court declines to deny Plaintiffs' motions on these grounds, in light of the fact that further briefing on these issues would likely be necessary before the Court could make a ruling as to futility.

In addition, Defendants argue that Plaintiffs' motion to amend is untimely and appears to be made for purposes of delay. Def. Opp. at 6.

**14**

Order accompanies this Memorandum Opinion.

## ORDER

This case comes before the Court on Plaintiffs' motion to amend their Complaint (# 27). For the reasons set forth in the accompanying Memorandum Opinion, it is, this 29 day of March, 2001, hereby

**ORDERED** that Plaintiffs' Motion to Amend is **DENIED**.

**SO ORDERED.**

Defendants point out that Plaintiffs' Complaint was filed in January of 2000, but the additional claims which Plaintiffs seek to bring via amendment relate to acts and events purportedly occurring in 1994. Defendants further note that Plaintiffs' new allegations are based primarily on documents which have been available to Plaintiffs since 1995. Despite Plaintiffs' response that the information upon which they base their claims has only recently been provided to them, *see* Pl. Reply at 9, Defendants insist that Plaintiffs' assertion is without basis in light of the fact that it was *Plaintiffs* who placed some of the key exhibits relating to their new claims in the Administrative Record. Def. Surreply at 2. Based on the current record, it is unclear whether Plaintiffs' claims against the Park Service are untimely. However, the Court need not make that difficult determination, as there are other, more readily discernable grounds requiring denial of Plaintiffs' motion.

The Court also notes further unexplained delay in the filing of Plaintiffs' proposed amended complaint. Plaintiffs, in their Rule 16.3(a) report, proposed an amendment deadline of June 15, 2000. Pl. Mem. at 3. Plaintiffs then moved to amend the deadline to extend it to July 28, 2000. Notwithstanding all of the attention paid to the amendment deadline, Plaintiffs' motion to amend the Complaint was not filed until August 4, 2000.