Robert H. HOFFMANN,
et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

No. CIV.A. 98–0857(HHK).

United States District Court,
District of Columbia.

May 30, 2003.

Justin A. Thornton, Washington, DC, Robert I. White, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX,

Shelley Cashion, Houston, TX, for Plaintiff.

Jeffrey Axelrad, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Plaintiffs, German citizens, filed this action against the United States and the Attorney General of the United States in 1989, seeking to recover photographic archives and paintings formerly belonging to Heinrich Hoffmann, Sr. After fourteen years of litigation, only plaintiffs' claim for an implied-in-fact contract of bailment with respect to the non-vested portion of the photographic archive remains.

Before this court are: (1) plaintiffs' motion for leave to file an amended consolidated complaint [# 36]; (2) plaintiffs' motion to transfer this case, in whole or in part, to the Court of Federal Claims [ # 39]; (3) plaintiff's motion for reconsideration of the court's June 28, 1999, decision [ # 47]; (4) defendants' renewed motion for summary judgment [ # 4]; (5) defendants' motion for a protective order staying all discovery [ # 43]; and (6) plaintiffs' motion to compel, pursuant to Fed. R.Civ.P. 37 [ # 54]. Upon consideration of these motions, the oppositions thereto, and the record of this case, the court concludes that plaintiffs' motions must be denied, defendants' motion for a protective order must be denied as moot, and defendants' renewed motion for summary judgment must be granted.

## I BACKGROUND INFORMATION

### A. Factual Background

The case grows out of plaintiffs' efforts to obtain the return of, or compensation

for, various property, owned or compiled by Heinrich Hoffmann Sr. ("Hoffmann Sr.") and his son, Heinrich Hoffmann Jr. ("Hoffmann Jr.").[1] Hoffmann Sr. and Hoffmann Jr. are both deceased. Plaintiffs are the heirs of Heinrich Hoffmann, Jr. (Robert H. Hoffmann, Heidemarie Krüger, Susanne Hustädt) and the Estate of Henriette von Schirach, Dr. Klaus V. Schirach, Executor.

Plaintiffs initially filed this lawsuit seeking the return of, or compensation for: (1) four watercolors painted by Adolph Hitler; (2) a photographic archive compiled by Hoffmann Sr. and his son, Hoffmann Jr., part of which officially vested in the possession of the United States in 1951 and part of which did not; and (3) the "Time–Life archive," a photographic archive given to the United States in the early 1980's by Time–Life, Inc. Plaintiffs' claims to the watercolor paintings, the vested portion of the photographic archive, and the Time–Life archive have been extinguished by prior rulings of this and other courts. Plaintiffs' only surviving claim is for the non-vested portion of a photographic archive compiled by Hoffmann Sr. That claim will be explored in much greater detail below.

**B. Procedural Background**

This case has had a long and complicated past. Plaintiffs in the present case, together with Texas businessman Billy F. Price, initially filed suit in the Southern District of Texas in 1983. In 1989, the United States District Court for the Southern District of Texas entered partial summary judgment on the issue of liability in plaintiffs' favor. *Price v. United States,* 707 F.Supp. 1465 (S.D.Tex.1989). On appeal, the Fifth Circuit reversed and re-

manded for entry of judgment of dismissal with prejudice as to certain claims and without prejudice as to others. *Price v. United States,* 69 F.3d 46, 54 (5th Cir. 1995). On petition for rehearing, the Fifth Circuit held that its dismissal was also without prejudice with respect to the archives not covered by the vesting order. *Price v. United States,* 81 F.3d 520 (5th Cir.1996).

The instant case was consolidated in the Southern District of Texas on October 2, 1997, from two actions filed by the same plaintiffs, in 1997 and 1989. On March 24, 1998, Billy F. Price was dismissed as a plaintiff, and the case was transferred to the United States District Court for the District of Columbia. In a memorandum opinion docketed June 28, 1999, this court rejected plaintiffs' claims based on theories of implied-in-fact contract (bailment), Fifth Amendment takings, and tortious conversion and granted defendants' motion for summary judgment with respect to all claims except for those relating to the Time–Life archive. *Hoffmann v. United States,* 53 F.Supp.2d 483 (D.D.C.1999). After relinquishing their Time–Life archive claim, plaintiffs filed an interlocutory appeal, challenging this court's adverse judgment. *See* Notice of Filing, Sept. 10, 1999. On appeal, the United States Court of Appeals for the Federal Circuit affirmed this court's decision in part, but vacated the grant of summary judgment insofar as it related to plaintiffs' implied-in-fact bailment claim with respect to the non-vested portion of the photographic archive. *Hoffmann v. United States,* 17 Fed.Appx. 980 (Fed.Cir.2001). This case is before this court on remand; plaintiffs' bailment claim for the non-vested portion of the photographic archive concerns us here.

---

**1.** Those seeking a more complete factual summary are referred to the prior decision of this court, *Hoffmann v. United States,* 53

F.Supp.2d 483 (D.D.C.1999), *aff'd in part, rev'd in part,* 17 Fed.Appx. 980 (Fed.Cir.2001).

On remand, plaintiffs have not sat idly by, however. They have filed a number of motions requiring the court's attention. In this memorandum opinion, the court will address the following: (1) plaintiffs' motion for leave to file an amended consolidated complaint; (2) plaintiffs' motion to transfer this case, in whole or in part, to the Court of Federal Claims; (3) plaintiff's motion for reconsideration of the court's June 28, 1999, decision holding that non-resident friendly aliens are not entitled to the protections of the Fifth Amendment; (4) defendants' renewed motion for summary judgment; (5) defendants' motion for a protective order; and (6) plaintiffs' motion to compel. The court will explore each matter in turn.

## II. ANALYSIS

### A. Plaintiff's Motion for Leave to File an Amended Consolidated Complaint

■ The court will first address plaintiffs' motion for leave to file an amended consolidated complaint. Plaintiffs seek to amend their complaint: (1) to increase their damage claim for the non-vested portion of the photographic archive from $9,000 to $73,000,000 because, plaintiffs claim, there are more non-vested photographs than they originally thought, and so their damages are far greater than they originally claimed; (2) to raise the Hague Treaty as an additional basis of recovery; and (3) to "restate everything that was in the case from the beginning, . . . all in one pleading so that anyone new to the case can ascertain everything necessary in one place." Pls.' Reply at 2.[2]

Defendants oppose this motion, arguing that plaintiffs' amended consolidated complaint "offers no new claims and, instead, seeks to relitigate issues already finally decided." Defs.' Opp'n to Pls.' Mot. for Leave to File at 1. In addition, according to defendants, the motion "is one more desperate effort to inject additional issues [into the case] to keep the litigation alive despite the solid defenses defendants have raised and which the Federal Circuit has suggested this Court rule upon." *Id.* at 5–6.

■ A party seeking to amend her complaint a second time may do so only by leave of the court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). A decision to grant such leave is within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Doe v. McMillan,* 566 F.2d 713, 720 (D.C.Cir.1977). Leave is to be freely given, however, and if a court denies a plaintiff's motion for leave to amend, the court must provide a sufficiently compelling reason for the denial. Adequate reasons are: undue delay, undue prejudice to the non-moving party, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996); *Pharm. Research & Mfrs. of Am. v. Thompson,* 259 F.Supp.2d 39, 57–58 (D.D.C.2003).

In this case, the court concludes that plaintiffs' motion for leave to file an amended consolidated complaint must be denied because: (1) there has been undue delay; (2) the amendment would unduly prejudice defendants; and (3) plaintiffs' conduct raises the spectre of bad faith.

---

**2.** Aside from Fed.R.Civ.P. 15, plaintiffs offer no authority in support of their proposed amendment.

## 1. Undue Delay

Plaintiffs have litigated this action, in one form or another, for nearly twenty years. The case has made its way though two different district courts,[3] three appellate proceedings,[4] two appellate rehearings,[5] two unsuccessful certiorari petitions,[6] and is now on remand from the Federal Circuit. Plaintiffs have been afforded ample opportunity to advance their best arguments. Nevertheless, plaintiffs did not file the instant motion for leave to file an amended, consolidated complaint until July 9, 2002–although plaintiffs concede that they had at their disposal all the facts necessary to raise the claims raised for the first time here by 1997, at the latest. *See* Pls.' Reply to Defs.' Opp'n to Pls.' Mot. for Leave to File at 1. Under these circumstances, the court finds that there has been undue delay, militating in favor of a denial of plaintiffs' motion.

Other courts have reached this same conclusion when faced with delays far shorter in duration. *See, e.g., Atchinson v. Dist. of Columbia,* 73 F.3d 418, 427 (D.C.Cir.1996) (affirming district court's denial of leave to amend because, *inter alia,* the litigation had been pending for nearly two years when the motion to amend was filed); *Doe,* 566 F.2d at 720 (affirming district court's decision to deny the plaintiff's motion to amend the complaint because the motion was filed more than three years after the commencement of litigation); *Komie v. Buehler Corp.,* 449 F.2d 644, 648 (9th Cir.1971) (affirming district court's decision to deny the plaintiff's

motion to amend the complaint because "[t]he motion was made 31 months after the answer was filed"), *Mittleman v. United States,* 997 F.Supp. 1, 10 (D.D.C.1998), *aff'd sub nom., Mittleman v. King,* 1998 WL 796300 (D.C.Cir. Oct.15, 1998) ("Plaintiff's recent discovery of a new fact supporting this cause of action does not mitigate the extreme delay in her request to amend her complaint-a delay of almost ten years.").

## 2. Undue Prejudice

The court next finds that allowing plaintiffs to amend their complaint would unduly prejudice defendants. Currently, there is only one relatively narrow issue pending in this case. *See Hoffmann v. United States,* 25 Fed.Appx. 885, 886 (Fed.Cir. 2001), *denying petition for reh'g,* ("The only claim that plaintiffs-appellants [may] assert on remand is their claim of an implied-in-fact bailment with respect to the 'non-vested portion of the [photographic] archive.' "). Moreover, assuming plaintiffs' motion is denied, that one issue may be resolved by defendants' renewed motion for summary judgment, currently pending before this court. If the court were to grant plaintiffs' motion, however, the resolution of this already-protracted litigation would be significantly delayed. At least part of this case would need to be dismissed or transferred to the Court of Federal Claims, and further discovery might even be required. Such an amendment, therefore, would subject defendants to clear and significant prejudice.

---

**3.** *Hoffmann v. United States,* 53 F.Supp.2d 483 (D.D.C.1999); *Price v. United States,* 707 F.Supp. 1465 (S.D.Tex.1989).

**4.** *Hoffmann v. United States,* 17 Fed.Appx. 980 (Fed.Cir.2001); *Price v. United States,* 81 F.3d 520 (5th Cir.1996); *Price v. United States,* 69 F.3d 46 (5th Cir.1995).

**5.** *Hoffmann v. United States,* 25 Fed.Appx. 885 (Fed.Cir.2001); *Price v. United States,* 81 F.3d 520 (5th Cir.1996).

**6.** *Hoffmann v. United States,* 535 U.S. 1112, 122 S.Ct. 2327, 153 L.Ed.2d 158 (2002); *Price v. United States,* 519 U.S. 927, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996).

This prejudice counsels in favor of a denial of plaintiffs' motion. *See, e.g., City of Williams v. Dombeck*, 203 F.R.D. 10, 11–12 (D.D.C.2001) (denying a motion to amend after citing similar considerations); *accord Wilderness Soc'y v. Griles*, 824 F.2d 4, 19 (D.C.Cir.1987) (affirming district court's denial of plaintiff's motion to amend where the motion was filed more than a year after the inception of litigation and dispositive motions had been filed and opposed); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247–48 (D.C.Cir.1987) (finding the district court's denial of the motion for leave to amend was "fully warranted" where the case was before the district court on remand, the motion to amend was filed years after the plaintiff had filed its initial complaint, and the district court had determined that the amendment would significantly delay the litigation's resolution).

### 3. Bad Faith

■ Finally, it is fairly well established that "[d]enying leave to amend is particularly appropriate when a lawsuit is on the verge of final resolution." *Wardell v. City of Chicago*, 2001 WL 849536, *4 (N.D.Ill. 2001). A plaintiff, quite simply, cannot be permitted to "circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens." *Glesenkamp v. Nationwide Mutual Ins. Co.*, 71 F.R.D. 1, 4 (N.D.Cal.1974), *aff'd per curiam*, 540 F.2d 458 (9th Cir.1976); *accord Local 472 of United Ass'n of Journeymen & Apprentices v. Georgia Power Co.*, 684 F.2d 721, 724–25 (11th Cir.1982) (no abuse of discretion to deny motion to amend that "appears to be nothing more than an effort to avoid an adverse summary judgment ruling").

In the instant action, plaintiffs' motion appears to be nothing more than an unfortunate attempt to "muddy the waters," to divert the court's attention from the resolution of defendants' dispositive motion, which, as noted above, is ripe and currently before this court. After all, by their own admission, plaintiffs had in their possession all the facts necessary to amend their complaint by 1997, but plaintiffs, without any explanation for the delay, advance the claims here for the first time. Such behavior raises the spectre of bad faith. The court is especially suspicious of plaintiffs' motion in light of the Federal Circuit's clear admonition to plaintiffs, concerning the scope of permissible argument before this court[7] It appears to this court, then, that plaintiffs, sensing the end is near,[8] are attempting to resuscitate previ-

---

7. The Federal Circuit, perhaps sensing that plaintiffs may seek to prolong this already-protracted litigation, provided:

 [P]laintiffs-appellants are not free to assert on remand 'all arguments previously made' with respect to the 'non-vested portion of the [photographic] archive.' In view of our August 16 decision and our denial today of plaintiffs-appellants' petition for rehearing, plaintiffs-appellants are limited in terms of the arguments they may make on remand. The only claim that plaintiffs-appellants may assert on remand is their claim of an implied-in-fact contract of bailment with respect to the 'non-vested portion of the [photographic] archive'.... If the district court

 rules in the government's favor on its statute of limitations defense, or if it rules in the government's favor on any other dispositive defense that, consistent with this opinion, is properly before it, then the case will be over, subject, of course, to any appeal of plaintiffs-appellants.

 *Hoffmann v. United States*, 25 Fed.Appx. 885, 886 (Fed.Cir.2001) (denying petition for rehearing).

8. In so finding, the court notes that the Federal Circuit has openly suggested that the Government's statute of limitations argument has merit. *Hoffmann*, 17 Fed.Appx. at 989–90. Plaintiffs are clearly mindful of that court's dim view of their current claims.

ously-rejected claims, in order to breathe life into this withering lawsuit. The court refuses to countenance such conduct. *See Key Airlines, Inc. v. Nat'l Mediation Bd.*, 745 F.Supp. 749, 752 (D.D.C.1990) (refusing to grant leave to amend the complaint because the plaintiff had acted in bad faith by withholding a claim until a very late stage in the litigation).[9]

For the forgoing reasons, the Court concludes that plaintiffs' motion for leave to file an amended consolidated complaint must be denied.

## B. Motion to Transfer

The court now turns to plaintiffs' motion to transfer this case, in whole or in part, to the Court of Federal Claims.

### 1. Motion to Strike

■ Before the court can address the merits of plaintiffs' motion, the court must address one preliminary matter: defendant's motion to strike plaintiffs' supplement to their motion to transfer the case in whole or in part to the Court of Federal Claims. Defendants contend that plaintiffs' supplemental motion should be

stricken because it is "not material to any matter pending before the Court." Def.'s Motion to Strike at 1.[10] Plaintiffs oppose defendants' motion, insisting that their supplemental motion is, in fact, relevant.

While the relevance of plaintiffs' supplemental motion does appear somewhat obscure, defendants fail to cite any authority to support the proposition that a motion may be stricken for lack of relevance. *See* LCvR 7.1(a) ("Each motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion ...."); *accord Flynn v. Thibodeaux Masonry, Inc.*, 2002 WL 31520354, *2 (D.D.C. Oct.28, 2002). Accordingly, defendants' motion to strike plaintiffs' supplement is denied, and plaintiffs' supplemental motion shall be considered.

### 2. Plaintiffs' Motion to Transfer

■ The court now turns to the merits of plaintiffs' motion to transfer this case, in whole or in part, to the Court of Federal Claims. Upon consideration of this motion, defendants' opposition thereto, and the record of this case, the court concludes that plaintiffs' motion must be denied.

---

9. The spectre of bad faith is additionally raised by the *content* of the amended consolidated complaint. As defendants amply demonstrate, in the proposed complaint, plaintiffs seek to relitigate claims which this and other courts have already resolved. For instance, plaintiffs' proposed amended consolidated complaint names Billy F. Price as a party to the action, Am. Consolidated Compl. ¶ 1, although Mr. Price was dismissed from this lawsuit years ago. *See* Transfer Order, Mar. 24, 1998 (Hughes, J.) (dismissing Price as a plaintiff); *Hoffmann*, 17 Fed.Appx. at 985–86 (refusing to review the United States District Court for the Southern District of Texas' decision to dismiss Price from this action), *cert denied*, 535 U.S. 1112, 122 S.Ct. 2327, 153 L.Ed.2d 158 (2002). *Cf. Polsby v. Thompson*, 201 F.Supp.2d 45, 51 (D.D.C.2002) (noting that a motion to amend may be denied if the amended complaint "merely restates the

same facts as the original complaint in different terms [or], reasserts a claim on which the court previously ruled") (quoting 3 Moore's Federal Practice § 15.15[3]) (3d ed.2000). The content of plaintiffs' consolidated amended complaint further demonstrates why plaintiffs' motion must be denied.

10. In plaintiffs' supplement, plaintiffs contend that "any United States citizen who has claims against the Republic of Germany, similar to the claims made against the United States Government in this case, has the right to freely prosecute such claims against the Government of Germany in German courts." Pls.' Supp. at 1 (citing Decl. Klaus Reuther). Plaintiffs argue that "the foregoing is a jurisdictional precondition to the exercise by the Court of Federal Claims of jurisdiction in this case." *Id.*

Plaintiffs ask this court to transfer this action to the Court of Federal Claims, pursuant to 28 U.S.C. § 1631. This section provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed ....

28 U.S.C. § 1631 (1982).

In filing this transfer motion, plaintiffs apparently assumed that the court would grant their motion for leave to file an amended consolidated complaint. Had the court done so, because the amended consolidated complaint included a request for damages in excess of $10,000, and such claims are within the exclusive jurisdiction of the Court of Claims, this court would have been without jurisdiction to consider plaintiffs' claim for monetary relief. *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C.Cir.2003) ("Under the (Big) Tucker Act, claims 'exceeding the $10,000 jurisdictional ceiling ... are within the exclusive jurisdiction of the Court of Claims.'") (quoting *Goble v. Marsh*, 684 F.2d 12, 15 (D.C.Cir.1982)).

█ Plaintiffs' motion for leave to amend was denied, however. Thus, plaintiffs' claim for monetary damages is limited to $9,000 for the non-vested portion of the archive. Because plaintiffs' claim is for less than $10,000, jurisdiction in this court is proper pursuant to the Little Tucker Act, which vests district courts with concurrent jurisdiction with the Court of Federal Claims over civil actions or claims against the United States not in excess of $10,000. 28 U.S.C. § 1346(a)(2); *see Hoffmann*, 17 Fed.Appx. at 984–85; Pls.' Opp'n to Defs.' Mot. for Summ. J. at 102–04; *id.* at 164 ("the jurisdictional limit of the Little Tucker Act has not been exceeded, and this Court may award Plaintiffs the relief they seek").[11]

As jurisdiction is proper in this court, this court is without power to transfer this action, in whole or in part, to the Court of Federal Claims. *See* 28 U.S.C. § 1631; *Hempstead County & Nevada County Project v. E.P.A.*, 700 F.2d 459, 462 (8th Cir.1983) (in order to transfer a case pursuant to 28 U.S.C. § 1631, "the court where the action is originally filed must find that there is a want of jurisdiction"); *Rogers v. United States*, 26 Cl.Ct. 1023, 1028 (1992) ("[A] transfer [pursuant to 28 U.S.C. § 1631] is a potentially available option only where the court finds that there is a want of jurisdiction in the transferor court.") (internal citations and quotations omitted); Defs.' Mot. in Opp'n to Pls.' Mot. to Transfer at 1 (noting that if the court denies plaintiffs' motion to file an amended consolidated complaint, "there is no basis, even in theory, for plaintiffs' [transfer] motion"). Consequently, plaintiffs' motion to transfer this case, in whole or in part, must be denied.

## C. Motion to Reconsider

█ The court may now consider plaintiffs' motion for reconsideration. Here, plaintiffs ask this court to reconsider and reverse its previous ruling that plaintiffs,

---

11. The court notes that, "[t]he amount of a claim under the Little Tucker Act, for jurisdictional purposes, is based on the actual recovery sought by a plaintiff pursuant to that claim and is not based on the potential worth of the claim." *Smith v. Orr*, 855 F.2d 1544, 1553 (Fed.Cir.1988); *see Hahn v. United States*, 757 F.2d 581, 587 (3d Cir.1985) (noting that a court determining damages alleged for Tucker Act purposes should look to the complaint).

as non-resident aliens without "substantial connections" to the United States, cannot assert a Fifth Amendment claim for any of the disputed properties. *Hoffmann v. United States*, 53 F.Supp.2d 483, 489 (D.D.C.1999). Defendants oppose plaintiffs' motion, arguing, *inter alia*, that the mandate rule bars the court from revisiting this settled question. Defendants are correct.

In this court's June 1999 decision, after protracted analysis, this court squarely rejected plaintiffs' Fifth Amendment claim. *Id.* That decision, moreover, was explicitly affirmed by the Federal Circuit. In so affirming, the Federal Circuit provided:

> Plaintiffs argue that the Fifth Amendment does not distinguish between aliens and citizens, and note that the Supreme Court has held that Fifth Amendment protection can extend to a non-enemy alien. *Russian Volunteer Fleet v. United States*, 282 U.S. 481, 489, 51 S.Ct. 229, 75 L.Ed. 473 (1931). However, Constitutional protections extend to aliens only 'when they have come within the territory of the United States and developed substantial connections with this country.' *United States v. Verdugo–Urquidez*, 494 U.S. 259, 270, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). Because Plaintiffs have failed to establish 'substantial connections' to the United States, we affirm the district court's decision with respect to Plaintiffs' Fifth Amendment claims.

*Hoffmann v. United States*, 17 Fed.Appx. 980, 986 (Fed.Cir.2001). Because the question at issue was expressly considered and decided by an appellate court, the mandate rule requires that this court, as an inferior court, honor that decision. *La-Shawn A. v. Barry*, 87 F.3d 1389, 1393 n. 3 (D.C.Cir.1996). Under the mandate rule-a doctrine which plaintiffs altogether ignore-

" 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.' " *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 596–97 (D.C.Cir.2001) (quoting *Briggs v. Pennsylvania R.R. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948)). Put simply, a trial court must "follow an appellate court's previous ruling on an issue in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002), *cert. denied*, —— U.S. ——, 123 S.Ct. 2246, —— L.Ed.2d —— (2003) (No. 02–1191) (citations omitted). Thus, " '[w]hen a case is appealed and remanded, the decision of the appellate court establishe[s] the law of the case, which must be followed by the trial court on remand.' " *Griffin v. United States*, 935 F.Supp. 1, 5 (D.D.C.1995) (quoting J.W. Moore, 1B Moore's Federal Practice, ¶ 0.404[1] at p. II–3 (2nd ed.1994)). Accordingly, this court is barred from reconsidering the ruling of the Federal Circuit. Plaintiffs' motion for reconsideration is consequently denied.

### D. Defendants' Motion for Summary Judgment

The court next turns to defendants' renewed motion for summary judgment. In this motion, defendants argue that plaintiffs' implied-in-fact bailment claim to the non-vested portion of the photographic archive must be dismissed as time-barred, under the Little Tucker Act's statute of limitations.

Defendants filed this renewed summary judgment motion on May 1, 1998, but the motion was not fully addressed by this court's June 1999 memorandum opinion. On appeal, the Federal Circuit made clear, however, that this court was free-and was even encouraged-to consider defendants' renewed motion for summary judgment on remand. Before immersing itself in the

resolution of defendants' motion, the court will pause to set the stage.

### 1. Factual Background Concerning the Non–Vested Portion of the Archive

Hoffmann Sr. served as a photographer in the Bavarian army and, in so doing, developed a close personal relationship with Adolf. During the course of this relationship, Hoffmann Sr. took two-and-a-half million photographs of the Fürer. In addition to his work for Hitler, from 1905 to 1945, Hoffmann Sr. owned and operated his family's photography business in Germany, which included a portrait studio, fine arts press, and press photography agency. Hoffmann Jr. joined his father's business in the mid–1930's and managed the press agency and a fine arts magazine. Hoffmann Sr. transferred all of his then-existing photographic archives to Hoffmann Jr. on Hoffmann Jr.'s twenty-first birthday, October 24, 1937.

The instant controversy arose in May 1945, at the close of the Second World War. At that time, according to plaintiffs, the United States Army seized the portion of the Hoffmann archive that had been stored in the town of Winhöring Germany. In late 1945, the United States allegedly sent *part* of this Winhöring archive to Nürnberg, for use by the War Crimes Commission. This portion of the Winhöring archive ("the Nürnberg portion") was subsequently transferred to Frankfurt and then to Alexandria Virginia, on October 26, 1949. Thereafter, on May 31, 1951, the United States Assistant Attorney General and Director of Alien Property executed an order vesting all right, title, interest, and claim in the Nürnberg portion of the archive in the Attorney General of the

United States, pursuant to the Trading with the Enemy Act, 50 U.S.C.App. § 1 *et seq. See* Vesting Order 17952, executed May 31, 1951, filed June 25, 1951, and published in the Federal Register on June 26, 1951, 16 Fed.Reg. 6162. The Nürnberg portion of the Winhöring archive is therefore the "vested" archive. Any claim plaintiffs may have had to the vested portion of the archive is now extinguished, as it is time-barred. *Hoffmann v. United States,* 53 F.Supp.2d 483 (D.D.C.1999) *aff'd in part, rev'd in part,* 17 Fed.Appx. 980, 987–89 (Fed.Cir.2001), *cert denied,* 535 U.S. 1112, 122 S.Ct. 2327, 153 L.Ed.2d 158 (2002).

Thus, plaintiffs' claim here is for the "non-vested" portion of the archive. That is, plaintiffs allege that, in addition to these "vested" photos, the United States continues to possess the remainder of Hoffmann's archive that was seized in Winhöring but that never made it to Nürnberg,[12] as well as "missing" portions of the archive that were seized by the United States Army in Freising and Bavaria. Plaintiffs initially sought recovery for the non-vested portion of the archive under two theories of liability: a conversion theory and a contractual bailment theory. In 1999, this court rejected plaintiffs' conversion claim because the court found that it was barred by the Federal Tort Claims Act's two-year statute of limitations. *Hoffmann,* 53 F.Supp.2d at 494. Plaintiffs' only surviving claim, then, concerns plaintiffs' contractual bailment theory.

### 2. Implied-in-fact Bailment Contract

 Plaintiffs thus contend that they are entitled to the return of, or compensation for, the non-vested portion of the archive because an implied-in-fact con-

---

**12.** According to plaintiffs, the Hoffmann photographic archive, seized by the United States in Winhoring in 1945, was two to three times larger than the inventory of images covered by the vesting order. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. at 43.

tract of bailment was created in May 1945 when the United States Army seized the Hoffmann photographic collection. An implied-in-fact bailment contract with the Government is created if property is seized and there is "a promise, representation or statement by an authorized [G]overnment official" that the seized property will be returned. *Ysasi v. Rivkind*, 856 F.2d 1520, 1525 (Fed.Cir.1988) (quoting *Shaw v. United States*, 8 Cl.Ct. 796, 799 (1985)); *Montego Bay Imports, Ltd. v. United States*, 25 Cl.Ct. 639, 656 (1992). To prove that an implied-in-fact bailment contract exists, a claimant must show a "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract." *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed.Cir.1984).

In this court's June 1999 opinion, this court found that the "record ... is devoid of any promise, representation or statement by an authorized official to the Hoffmanns having either the purpose or effect of communicating an offer to return the archives." *Hoffmann*, 53 F.Supp.2d at 488. The court therefore concluded that plaintiffs had "failed to raise a genuine issue of material fact in support of the theory that an implied-in-fact bailment was created with respect to the Nürnberg photographic archives." *Id.* at 489.

The Federal Circuit did not agree, however. The Federal Circuit found that "[e]vidence in the record indicates that there is a possibility that both members of the United States Army as well as Hoffmann Jr. were under the impression that the non-vested photographs were on loan to the United States." *Hoffmann*, 17 Fed. Appx. at 988–89. Accordingly, that court concluded that "a genuine issue of material fact exists as to the existence of an implied-in-fact contract of bailment with re-spect to the non-vested portion of the archive." *Id.* at 989.

That finding did not end the inquiry, however. The Federal Circuit also found it likely that any claim, premised on the implied-in-fact bailment, was time-barred. As noted previously, defendants had raised this defense in their briefing, but this court had not reached the question, since the court found that no implied-in-fact bailment contract had been created.

### 3. Summary Judgment Standard

Before this court is defendants' renewed motion for summary judgment. Under Fed.R.Civ.P. 56, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. But the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. United States Navy,* 813 F.2d 1236, 1242 (D.C.Cir.1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

### 4. Statute of Limitations

The question now before this court is: if an implied-in-fact contract of bailment was created in May of 1945, when the United States Army seized the Hoffmann photographic collection, is a claim for the breach of that contract barred by the applicable statute of limitations? *See Hoffmann,* 17 Fed.Appx. at 989–90. Upon careful consideration, the court finds that it is; plaintiffs' implied-in-fact bailment claim is time-barred.

As alluded to above, the Little Tucker Act sets up a jurisdictional scheme for certain claims against the United States, including claims for breach of an implied contract of bailment. *Waters v. Rumsfeld,* 320 F.3d 265, 270 (D.C.Cir. 2003). Under the Little Tucker Act, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a) (1994). The Little Tucker Act's six-year statute of limitations is jurisdictional in nature. *Bray v. United States,* 785 F.2d 989, 992 (Fed.Cir.1986), *Cruz v. United States* 219 F.Supp.2d 1027, 1044 (N.D.Cal.2002); *Japanese War Notes Claimants Ass'n of the Philippines, Inc. v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, 358 (1967); *Mulholland v. United States,* 175 Ct.Cl. 832, 361 F.2d 237, 239 (1966). Thus, this court lacks jurisdiction

to hear a claim not filed within the applicable time period.

Under the Little Tucker Act, a claim first accrues "when all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1577 (Fed. Cir.1988) (citing *Kinsey v. United States,* 852 F.2d 556, 557 (Fed.Cir.1988)).[13] Generally, in the case of a breach of a contract, a cause of action accrues at the time of the breach-when one fails to perform a contractual duty that is due. *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed. Cir.1997); *Winstar Corp. v. United States,* 64 F.3d 1531, 1545 (Fed.Cir.1995), *aff'd,* 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). In the case of a bailment contract, as we have here, "the breach, or failure to perform, occurs when the bailee refuses to return the property at the request of the owner." *Hoffmann,* 17 Fed. Appx. at 988 (citing *Ysasi,* 856 F.2d at 1525).

In the instant action, the court concludes that plaintiffs' claim accrued on May 20, 1949, because, at that time, the Government refused to return the photographic archive at Hoffmann Jr.'s request, and Hoffmann Jr. knew of the Government's refusal.[14] In In this conclusion, the court looks to the letter Hoffmann Jr. sent to the United States Army's Historical Division on June 17, 1949. This letter pro-

**13.** In *Hopland Band of Pomo Indians,* the Federal Circuit was actually examining the accrual of a claim under 28 U.S.C. § 2501 (1982). Section 2501 and § 2401 have the same accrual language, however, and the rule stated in *Hopland* has been held to apply to actions brought pursuant to the Little Tucker Act. *See Hopland Band of Pomo Indians,* 855 F.2d at 1577 n. 3; *LeBeau v. United States,*

215 F.Supp.2d 1046, 1057 (D.S.D.2002); *Spehr v. United States,* 51 Fed.Cl. 69, 91 (2001).

**14.** *See Hoffmann,* 53 F.Supp.2d at 493 (similarly finding that the plaintiffs' conversion claim for the non-vested portion of the archive accrued on May 20, 1949).

vides: "On 20 May 49 I was informed by Major Murphy, Historical Division, Frankfurt/Main, that my entire [15] photo archive had been forwarded to Washington *and I had no right to claim its return.* Because of the foregoing, as owner, I am compelled to lodge protest." Pls.' Ex. 85 at 1 (Hoffmann Jr. Ltr. June 17, 1949) (emphasis added). Any doubt concerning the Government's intentions, and Hoffmann Jr.'s awareness thereof, is dispelled by what comes next. The letter goes on to state:

> I held the opinion until 20 May 49 that my property would be immediately returned to me. I regarded it as property on loan which I was to administer. The information of Army seizure therefore came as all the more of a shock to me.... In concluding I take the liberty of asking one more question. *Why am I being dispossessed of my archive?* ... I can hardly believe that American colleagues who today photograph President Truman daily would agree with the principle that one day they would be dispossessed of their personal property taken without reason and without any court decision.

*Id.* at 2–3 (emphasis added); *see also* Pls.' Opp'n to Defs.' Mot. for Summ J. at 23–24 (noting that "the Historical Division, on instructions from Washington, decided to ship the whole Hoffmann File to the United States" and that "Hoffmann Jr. was told about the decision on May 20, 1949").

This letter is unambiguous. It demonstrates that, if an implied-in-fact contract of bailment was created in May of 1945 between Hoffmann Jr. and the Government, the Government, as bailee, breached that contract by May 20, 1949, when the Government refused to return the archive to Hoffmann, Jr., at his request. Further-

more, the letter demonstrates that, assuming a promise, representation or statement by an authorized government official had been made to return the seized property, by May 29, 1949, Hoffmann Jr. *knew* that that promise had been repudiated. *See Hopland Band of Pomo Indians,* 855 F.2d at 1577. He knew that he had been, in his words, "dispossessed" of the archive. Pls.' Ex. 85 at 2. The court therefore concludes that, assuming an implied-in-fact bailment contract between Hoffmann and the United States existed, the United States breached that contract and Hoffmann, Jr., as bailee, was aware of the breach, by May 20, 1949. Plaintiffs' Tucker Act claim therefore accrued on that date.

■ Even if the court were to disregard Hoffmann Jr.'s forgoing statement, the court would still find that plaintiffs' cause of action accrued by 1956. The court reaches this conclusion because, on January 29, 1951, Hoffmann Jr. again protested the Army's confiscation of the photographs, and five years later, in March of 1956, an attorney hired by Hoffmann Jr. asserted a claim for their return. Defs.' Ex. A, Tab 7 (Land Ltr. to Brucker, Mar. 15, 1956). Hoffmann Jr.'s attorney was informed that the return of the property would have to occur through "diplomatic channels," and "[i]f Mr. Hoffmann desires to pursue this matter further, he may refer his claim to the German Foreign Office." Defs.' Ex. A, Tab 10 (Levie Ltr. to Land, May 22, 1956). The Government's response to Hoffmann Jr.'s counsel indicates the denial of the existence of any contract of bailment with respect to the photographs, including the non-vested portion of the archive, and by sending the letter to Hoffmann Jr.'s counsel, the Gov-

---

**15.** Elsewhere, the letter makes plain that, by the "entire archive," Hoffmann Jr. is referring to the part of the archive which was subsequently vested, as well as the non-vested portion of the archive. *See* Pls.' Ex. 85 at 1; *see also Hoffmann,* 53 F.Supp.2d at 493.

ernment put Hoffmann Jr. on notice of the breach.

The court finds that plaintiffs' Little Tucker Act claim accrued on 1949. Plaintiffs' lawsuit was filed more than six years after that date. It is therefore time-barred.[16]

### a. Fraudulent Concealment

██ Plaintiffs attempt to avoid this statute of limitations bar by arguing that the United States Government fraudulently concealed the existence of plaintiffs' cause of action. Plaintiffs claim that defendants' conduct thus tolled the statute of limitations because, in plaintiffs' words, "[t]he Army first embezzled the archives and then concealed this theft from Hoffmann Jr." Pls.' Opp'n to Defs.' Mot. for Summ. J. at 135; *see also id.* at 140. Plaintiffs' argument is without merit.

██ As both parties recognize, the equitable doctrine of fraudulent concealment can delay the accrual of a cause of action. Fraudulent concealment tolls a statute of limitations when: "(1) there has been 'deliberate concealment' of (2) 'material facts' relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through 'reasonable diligence.'" *Int'l Ass'n of Machinists & Aerospace Workers v. NLRB,* 130 F.3d 1083, 1087 (D.C.Cir.1997) (quoting *Fitzger-*

*ald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977)). *See also Hopland Band of Pomo Indians,* 855 F.2d at 1577; *Mitchell v. United States,* 13 Cl.Ct. 474, 477 (1987). Put another way, in order to find that the doctrine of fraudulent concealment applies, the court must find that the defendant actively misled the plaintiff, and that the plaintiff "had neither actual nor constructive knowledge of the facts constituting [her] cause of action despite her due diligence." *Grimmett v. Brown,* 75 F.3d 506 (9th Cir.1996) (citations and emphasis omitted).

There is no basis for such a finding here. Even taking the evidence in the light most favorable to plaintiffs, the court concludes that the United States Government had possession of the entire photographic archive by 1949, and, by that time, Hoffmann Jr. was on notice that he had a potential claim for the archive's return. *Japanese War Notes Claimants Ass'n of the Philippines,* 373 F.2d at 359 ("Once plaintiff is on inquiry that it has a potential claim, the statute can start to run."). In such a case, there is no genuine issue of material fact as to whether the doctrine of fraudulent concealment applies to toll the statute of limitations. *Cf. Mathews v. Kidder, Peabody & Co., Inc.* 260 F.3d 239, 256 (3rd Cir.2001) (describing the plaintiff's burden). The doctrine of fraudulent concealment, then, provides plaintiffs no comfort.

---

16. In the face of this evidence, plaintiffs continue to insist that the breach of the implied-in-fact contract of bailment, did not occur until 1983 when plaintiffs' demands for the return of those archives were denied by the government. *See, e.g.,* Pls.' Opp'n to Defs.' Mot. for Summ. J. at 46 (noting that the Government's September 12, 1983, refusal to return to Hoffmann archive "was the first notice that employees in the Government were adopting a position as to the Hoffmann Photographic Archives that might require litigation" and that, it was not until that date, that the plaintiffs "acquired a cause of action against the Government"), *id.* at 105 ("[b]reach of the implied-in-fact contract of bailment, i.e., breach of the duty to return the property, occurred in 1983"); *id.* at 137 ("the [Government's] lawful possession and custody of the archives continued until demands were made in 1983, 1984 and 1996 for the return of the archives by the Plaintiffs"). Plaintiffs' claims are simply not supported by the record, however. Plaintiffs neither explain away the June 17, 1949, letter from Hoffmann Jr., nor do they point to any competent evidence, tending to establish their version of the facts concerning the time of the alleged breach.

### b. Plaintiffs Other Assertion

■ Plaintiffs finally appear to argue that statutes of limitations can never bar an action involving fraud or theft. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. at 124–25 ("Theft never starts the statute of limitations.") (citing *O'Keeffe v. Snyder*, 83 N.J. 478, 416 A.2d 862 (1980); *Menzel v. List*, 28 A.D.2d 516, 279 N.Y.S.2d 608 (1967), *rev'd*, 24 N.Y.2d 91, 298 N.Y.S.2d 979, 246 N.E.2d 742 (1969)). Assuming this is plaintiffs' argument, it is without support in law. Indeed, as defendants recognize, even the cases cited by plaintiffs make plain that the statute of limitations starts running when a putative plaintiff, deprived of property by fraud or theft, knows or should know that the putative defendant possesses the property and intends to retain it.

In sum, the court finds that any cause of action which plaintiffs might have asserted concerning the non-vested portion of the photographic archive accrued in 1949, or at the *very* latest by 1956, over twenty-five years before the instant action was filed. As such, plaintiffs' claim was filed beyond the Little Tucker Act's six-year limitations period and is time-barred. This court is without jurisdiction to further entertain plaintiffs' claims.

### E. Discovery–Related Motions

As a final matter, the court notes that the following two discovery-related motions are currently pending before this court: (1) defendants' motion for a protective order staying all discovery; and (2) plaintiffs' motion to compel, filed pursuant to Rule 37. These motions must be denied, because they are rendered moot by the decision of this court granting judgment in favor of defendants.

### III. CONCLUSION

For the forgoing reasons, it is this 30th day of May 2003, hereby

**ORDERED** that plaintiffs' motion for leave to file an amended consolidated complaint [# 36] is **DENIED**; and it is further

**ORDERED** that defendants' motion to strike plaintiffs' supplement to their motion to transfer the case in whole or in part, to the Court of Federal Claims [# 48] is **DENIED**; and it is further

**ORDERED** that plaintiffs' motion to transfer this case, in whole or in part, to the Court of Federal Claims [ # 42] is **DENIED**; and it is further

**ORDERED** that plaintiffs' motion for reconsideration of the court's June 28, 1999, decision holding that non-resident friendly aliens are not entitled to protection under the Fifth. Amendment [ # 47] is **DENIED**; and it is further

**ORDERED** that defendants' renewed motion for summary judgment [# 4] is **GRANTED**; and it is further

**ORDERED** that defendants' motion for a protective order staying all discovery in these proceedings pending resolution of defendants' third renewed motion to dismiss [ # 43] is **DENIED** as moot; and it is further

**ORDERED** that plaintiffs' motion for an order under Rule 37 compelling defendants to answer interrogatories served and to disclose documents [ # 54] is further **DENIED**.

An appropriate order of judgment accompanies this memorandum opinion.