Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 12, 2002      Decided February 28, 2003

No. 01-5374
& No. 01–5375

MARY R. WATERS, ET AL.,
APPELLANTS

v.

DONALD H. RUMSFELD,
SECRETARY, U.S. DEPARTMENT OF DEFENSE AND
ROBERT J. CORTER, JR., MAJOR GENERAL,
DIRECTOR, U.S. DEFENSE COMMISSARY AGENCY,
APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 00cv00332 & No. 01cv00472)

———

*Claude D. Convisser* argued the cause and filed the briefs for appellants.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: GINSBURG, *Chief Judge*, and EDWARDS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The plaintiffs in this case filed actions against the Secretary of Defense and the Director of the Defense Commissary Agency on behalf of themselves and a class of more than 9,000 people who bag and carry groceries for customers at United States military commissaries around the world. We affirm the district court's denial of the plaintiffs' request to declare an act of Congress unconstitutional. We vacate, however, the district court's denial of the plaintiffs' claims for money damages under the Fair Labor Standards Act, because exclusive jurisdiction over those claims lies in the United States Court of Federal Claims.

I

Military commissaries are grocery stores that serve active and retired military personnel and their dependents. The commissaries are operated by the Defense Commissary Agency, a component of the Department of Defense. The commissaries do not regard the plaintiffs as their employees and do not pay them a salary or other compensation; the grocery baggers work solely for tips from the customers for whom they bag and carry groceries. The plaintiffs also allege that, in order to receive a commissary's permission to work for tips, baggers are required to perform additional work for which they receive neither salary nor tips. Among other duties, this work includes gathering shopping carts and collecting litter.

The plaintiffs contend that, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, they are employees of the commissaries and must be paid the minimum wage, compensated for overtime hours, and provided with other

benefits prescribed by the Act. *See* 29 U.S.C. §§ 206, 207. In 1978, Congress expressly addressed the FLSA status of commissary baggers. In relevant part, Public Law 95-485 reads as follows:

> [A]n individual who performs bagger or carryout service for patrons of a commissary of a military department may not be considered to be an employee for purposes of the Fair Labor Standards Act of 1938 by virtue of such service if the sole compensation of such individual for such service is derived from tips.

Act of Oct. 20, 1978, Pub. L. No. 95-485, § 819, 92 Stat. 1611, 1626 (codified at 29 U.S.C. § 203 note).

Two groups of commissary baggers filed class action complaints in the United States District Court. The first count of lead plaintiff Mary Waters' complaint sought a declaratory judgment that Public Law 95-485 is unconstitutional because it denies persons performing bagger and carryout services the equal protection of the laws. The remaining counts of Waters' complaint, and all of the counts of the complaint filed by lead plaintiff Calvin Davis, charged that the defendants are liable to the plaintiffs under the FLSA for unpaid minimum wages, unpaid overtime, and liquidated damages.[1] The district court granted the government's motion to dismiss both the constitutional and FLSA claims, and the plaintiffs filed the instant appeal.

## II

The plaintiffs contend that Public Law 95-485 violates the equal protection component of the Due Process Clause of the Fifth Amendment because it unfairly carves out commissary baggers from the protections accorded other workers under the FLSA.[2] We review this contention de novo. *LaRouche v. Fowler*, 152 F.3d 974, 987 (D.C. Cir. 1998). Because the plaintiffs do not assert that commissary baggers constitute a

---

[1] The complaints also sought attorney's fees and costs.

[2] Both the plaintiffs and the government agree that the district court had jurisdiction over this claim under 28 U.S.C. § 1331.

suspect class, or that Public Law 95-485 infringes upon fundamental constitutional rights, we must uphold the statute if it has any rational basis. As the Supreme Court said in *FCC v. Beach Communications, Inc.*:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

508 U.S. 307, 313 (1993); *see Williamson v. Lee Optical*, 348 U.S. 483, 488–89 (1955).

The government proffers such a rational basis here. It notes that Congress enacted Public Law 95-485 following a decision by the Civil Service Commission that commissary baggers were Defense Department employees for purposes of the FLSA. *See* 1 U.S. Op. Off. Legal Counsel 102 (1977) (discussing unpublished Civil Service Commission decision). According to the government, Congress decided to override the Commission's ruling because it feared the decision would make commissary bagger positions more difficult for military dependents to obtain. As the government explains, tips from commissary bagging provide an important source of supplemental income for these individuals, who often find it difficult to obtain other employment because they are relatively short-term residents of the area in which they are stationed. Appellees' Br. at 8, 15–17. If commissary baggers were covered by the FLSA, the government contends, the dependents of service personnel would be displaced by local civilians who would take the work as a route to more permanent positions. *Id.* at 16–17.

The plaintiffs dispute whether this concern truly was Congress' motivation, and, even if it was, whether excluding baggers from FLSA coverage is really necessary to accomplish that purpose. Although our examination of the legislative record makes clear that preserving opportunities for dependents of military personnel was indeed a purpose of

Public Law 95-485, *see infra* notes 3–5, we need not dwell on the point because "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communications*, 508 U.S. at 314. All that is required is that there be "plausible reasons for Congress' action." *Id.* at 313–14 (internal quotation marks omitted). Nor need we determine whether the vehicle chosen by Congress is necessary to accomplish its purpose. To uphold the statute, all we must decide is that there is "any conceivable rational basis" for the legislative classification. *Id.* at 309.

There is no doubt that Congress could rationally conclude that excluding baggers from FLSA coverage would enhance the employability of spouses and other dependents of service personnel. The transient nature of service life necessarily limits the employment opportunities of military dependents,[3] and many do earn supplemental income working as grocery baggers.[4] It would be rational for Congress to conclude that if baggers were covered by the FLSA, local civilians would successfully compete to fill the positions on a more permanent basis, leaving fewer opportunities for military dependents newly arriving from other posts.[5] Nothing more is required

---

[3] *See A Bill to Amend the Fair Labor Standards Act: Hearings on H.R. 6256 Before the House Subcomm. on Labor Standards, Comm. on Educ. & Labor*, 95th Cong. 3 (1978) [hereinafter *Subcommittee Hearings*] (statement of Rep. Daniel) (indicating that spouses of service personnel reported "[t]ime after time . . . that they are virtually unemployable because they are short-term residents").

[4] *See Subcommittee Hearings* at 34 (statement of Maj. Gen. Burkett) ("The typical bagger is a military dependent, either a wife or a teenager, son or daughter, off-duty military personnel, or retired military."); Waters Decl. ¶ 10 (Dec. 2000) (stating that approximately 32 of the 53 individuals registered to serve as baggers at the Fitzsimons Army Center Commissary are military dependents, and that 18 of the remaining 21 are active-duty personnel, active reserve personnel, or military retirees).

[5] *See Subcommittee Hearings* at 4 (statement of Rep. Daniel) ("If the baggers' jobs are absorbed by civil service, . . . they will become

to uphold the statute. As the Supreme Court has instructed, our "standard of review is a paradigm of judicial restraint":

> The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted.

*Beach Communications*, 508 U.S. at 314 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)).

Finally, the plaintiffs suggest that excluding them from the protection of the FLSA is simply unfair. But "classifying governmental beneficiaries [ ] 'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration." *Beach Communications*, 508 U.S. at 315–16 (quoting *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1987)). Where the line is not drawn to disadvantage a suspect class, Congress' decision to prefer one group of potential beneficiaries over another survives judicial scrutiny as long as it is minimally rational. *Id.* at 313. We conclude that the classification at issue in this case satisfies that test.

## III

In addition to a declaration that Public Law 95-485 is unconstitutional, the plaintiffs seek unpaid minimum wages, unpaid overtime, and liquidated damages under the FLSA. They contend that even if the law is constitutional, it excludes from FLSA coverage only those individuals who perform "bagger or carryout service," and that because they perform additional duties that are not excluded, they are entitled to

---

entry level jobs for those intent on career progression. Those who now perform this service will be frozen out."); *id.* at 17 (statement of Rep. Aspin) (noting that commissaries "will naturally prefer to hire persons who won't be pulled off the job").

full protection under the FLSA. The district court rejected the plaintiffs' statutory interpretation, holding that Congress did not intend "to provide *any* FLSA coverage to grocery baggers, even if they performed duties in addition to bagging and carrying." *Waters v. Rumsfeld*, No. 00-0332, Mem. Op. at 15 (D.D.C. Sept. 21, 2001).

Before we may examine the merits of the district court's holding, we must first assure ourselves that the district court had jurisdiction to adjudicate the plaintiffs' FLSA claims. The "Little Tucker Act" grants United States district courts concurrent jurisdiction with the United States Court of Federal Claims over civil actions or claims against the United States

> not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . .

28 U.S.C. § 1346(a)(2). Under the (Big) Tucker Act, claims "exceeding the $10,000 jurisdictional ceiling ... are within the exclusive jurisdiction of the Court of Claims." *Goble v. Marsh*, 684 F.2d 12, 15 (D.C. Cir. 1982); *see United States v. Hohri*, 482 U.S. 64, 72 (1987); *Van Drasek v. Lehman*, 762 F.2d 1065, 1071 n.10 (D.C. Cir. 1985).[6]

---

[6] The Tucker Act grants the United States Court of Federal Claims jurisdiction

> to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As the Supreme Court has explained, the understanding that claims for more than $10,000 are within the exclusive jurisdiction of the Court of Federal Claims "is not based on any language in the Tucker Act granting such exclusive jurisdiction to the Claims Court. Rather, that court's jurisdiction is

The district court concluded that, in light of the nature of the plaintiffs' demands for unpaid wages and overtime, they necessarily sought money damages in excess of $10,000. No party disputes this point. However, that fact does not necessarily divest the district court of jurisdiction. The plaintiffs may "remain in District Court under the Tucker Act even if their damages exceed $10,000 in amount, as long as they waive any claims in excess of $10,000." *Goble*, 684 F.2d at 15; *see Stone v. United States*, 683 F.2d 449, 451 (D.C. Cir. 1982). It is apparently on this ground that the district court took jurisdiction, stating in a footnote: "In the event that the Court does not dismiss their action, Plaintiffs would amend their Complaint to limit their claims to $10,000 in money damages." *Waters*, Mem. Op. at 13 n.12 (citing *Davis* Plaintiffs' Opp'n to Defendants' Mot. to Dismiss at 19).

On appeal, the plaintiffs—who below had no objection to the district court deciding their FLSA claims—now argue that the court was without jurisdiction to do so because they did not in fact waive claims for amounts in excess of $10,000.[7] On the other hand, the government—which in the district court resisted a finding of jurisdiction on the ground that the Tucker Act gave exclusive jurisdiction to the Court of Federal Claims—now argues that the plaintiffs effectively waived claims for amounts over $10,000 so as to vest jurisdiction in

_____

'exclusive' only to the extent that Congress has not granted any other court authority to hear the claims that may be decided by the Claims Court." *Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988).

[7] In the district court, the plaintiffs argued that the Tucker Act's grant of jurisdiction to the Court of Federal Claims does not control this case because, in their view, the Act applies only to complaints seeking damages from appropriated funds of the United States. The Defense Commissary Agency, the plaintiffs asserted, is a "non-appropriated funds instrumentality." The district court did not decide whether the plaintiffs were correct about the applicability of the Tucker Act to non-appropriated funds instrumentalities, because it ruled that the Defense Commissary Agency does in fact receive appropriated funds. *Waters*, Mem. Op. at 12. The plaintiffs do not appeal that ruling.

the district court under the Little Tucker Act. The irony of the parties' reversal of positions aside, we have an independent obligation to determine jurisdiction de novo. *See Lepre v. Dep't of Labor*, 275 F.3d 59, 64 (D.C. Cir. 2001).

In *Goble v. Marsh*, this circuit held that, for a district court to maintain jurisdiction over a claim that might otherwise exceed $10,000, a plaintiff's waiver of amounts over that threshold must be "clearly and adequately expressed." 684 F.2d at 17. In *Goble*, although the plaintiffs had waived their backpay claims in excess of $10,000, we held those waivers insufficient because they "did not expressly disclaim" damages over $10,000 that would accrue after the filing of the complaints and before final judgment. *Id.* at 16.

The plaintiffs in the instant case did not expressly disclaim monetary damages over $10,000. Rather, the language upon which the district court apparently relied for its conclusion that the plaintiffs had waived claims over that amount reads as follows:

> In the alternative that this Court holds that the plaintiffs' claims in federal district court are subject to [the Little Tucker Act], the plaintiffs request leave to submit consent forms pursuant to 29 U.S.C. § 216 limiting their claims to not more than $10,000 each. Any consent forms which plaintiffs moved this Court to provide to potential class members also would include this $10,000 cap.

*Davis* Plaintiffs' Opp'n at 19. On appeal, plaintiffs' counsel submits that he did not intend by this language to waive all of his clients' claims in excess of $10,000, but only to ask the court to give each plaintiff an opportunity to decide whether to consent to such a limited recovery in order to remain in district court: "In fact, the plaintiffs-appellants were not prepared to amend their Complaint to limit their claims to $10,000 in money damages; their counsel only sought leave for each one to decide on his or her own whether to file consent forms so limiting their damages and allowing him or her then to proceed in the District Court." Appellants' Opp'n to Appellees' Mot. to Transfer at 3. This explanation is

consistent with the language from the plaintiffs' district court pleading quoted above, as well as with additional language on the same page of the same pleading. *See Davis* Plaintiffs' Opp'n at 19 (stating that the plaintiff "*may* bring herself into conformity with the jurisdictional limitation . . . *by filing* a consent form . . . acknowledging a cap on her damages of $10,000") (emphasis added).

We conclude that the plaintiffs did not "clearly and adequately express" an intent to waive their FLSA claims in excess of $10,000. Accordingly, the Court of Federal Claims has exclusive jurisdiction to adjudicate those claims, and the district court was without jurisdiction to rule on their merits.

IV

For the foregoing reasons, we affirm the district court's determination that Public Law 95-485 is constitutional under the Fifth Amendment. However, we vacate the judgment with respect to the plaintiffs' FLSA claims, remand those claims to the district court, and direct that court to transfer them to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1631.[8]

[8] The government initially moved to transfer this appeal to the United States Court of Appeals for the Federal Circuit. Under 28 U.S.C. § 1295(a)(2), that court—with certain exceptions not relevant here—has exclusive jurisdiction over the appeal of any case in which the jurisdiction of the district court was founded "in whole or in part" on the Little Tucker Act. *Id.* § 1295(a)(2). Section 1295(a)(2) is inapplicable here, however, in light of our conclusion that the district court's jurisdiction was not properly based on the Little Tucker Act in any part. At oral argument, both parties agreed that if we so concluded, the appropriate disposition would be to transfer the plaintiffs' FLSA claims to the Court of Federal Claims.