RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

STEW FARM, LTD.,

        *Plaintiff-Appellant,*

      *v.*

NATURAL RESOURCES CONSERVATION SERVICE; PICKAWAY COUNTY SOIL AND WATER CONSERVATION DISTRICT; WATERSHED MANAGEMENT, LLC; CARL HAMMAN,

        *Defendants-Appellees.*

No. 13-4111

---

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:12-cv-00299—George C. Smith, District Judge.

Argued: August 8, 2014

Decided and Filed: August 25, 2014

Before: MOORE, SUTTON, and ALARCÓN, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Richard T. Ricketts, RICKETTS CO., LPA, Pickerington, Ohio, for Appellant. Aaron M. Glasgow, ISAAC WILES BURKHOLDER & TEETOR LLC, Columbus, Ohio, for Appellee Pickaway County. John J. Stark, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Federal Appellee. Scott E. Williams, HAMMOND SEWARDS & WILLIAMS, Columbus, Ohio, for Watershed Management Appellees. **ON BRIEF:** Richard T. Ricketts, RICKETTS CO., LPA, Pickerington, Ohio, for Appellant. Aaron M. Glasgow, Mark Landes, ISAAC WILES BURKHOLDER & TEETOR LLC, Columbus, Ohio, for Appellee Pickaway County. John J. Stark, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio,

---

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

for Federal Appellee.  Scott E. Williams, HAMMOND SEWARDS & WILLIAMS, Columbus, Ohio, for Watershed Management Appellees.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  STEW Farm, Ltd. brought this suit against a number of defendants involved in the building of grass waterways on property that STEW Farm now owns.  STEW Farm alleged that the grass waterways were improperly designed and built and do not conform to federal law.  All defendants moved to dismiss the suit on a variety of grounds, including lack of federal subject-matter jurisdiction.  The district court concluded that the suit sounded in state tort law with no federal subject-matter jurisdiction and granted the motions dismissing the case.  STEW Farm appeals.  Because STEW Farm can point to no statute providing an express or implied right of action for its suit, we **AFFIRM** the district court judgment.

## I. BACKGROUND

STEW Farm is the owner of a 300-acre farm in Pickaway County, Ohio.  R. 39 (First Am. Compl. ¶ 21) (Page ID #706).  The Natural Resources Conservation Service ("NRCS") is an agency within the United States Department of Agriculture.  7 U.S.C. § 6962.  Watershed Management, LLC and Carl Hamman (collectively, "Watershed") are a private corporation and one of its owners.  Pickaway County Soil and Water Conservation District ("PCSWCD") is a political subdivision created pursuant to Ohio state law which shares office space with NRCS and whose employees are supervised by NRCS.  R. 39 (First Am. Compl. ¶ 3) (Page ID #703).  Defendant Doug Kohli is an employee of PCSWCD and supervised the projects at issue in this case.  *Id.* ¶ 4 (Page ID #703).[1]  STEW Farm seeks money damages and declaratory relief alleging that grass waterways were improperly installed on the farm it now owns.

_____

[1]The district court dismissed the suit against Kohli, and STEW Farm has not appealed that ruling.

STEW Farm purchased the land from John Neff, who originally contracted with Watershed to have the waterways built and who received a federal subsidy from the NRCS for building the grass waterways. *Id.* ¶¶ 22–25 (Page ID ##706–07). Neff and Watershed created an oral contract for the installation of grass waterways. *Id.* ¶ 25 (Page ID #707). Neff would pay to Watershed the amount that Neff would be reimbursed by NRCS for installing the waterways. Kohli designed the waterways, which Watershed installed. After installation, Kohli examined and certified that the waterways were designed and constructed properly. *Id.* ¶¶ 43–44, 49 (Page ID #710, 711). After receiving Kohli's certification, NRCS certified the waterways as well, which allowed Neff to receive the federal reimbursement. *Id.* ¶ 49 (Page ID #711). Neff, however, failed to pay Watershed because he believed there was a lip or ridge along the edge of the grass waterways that prevented proper draining.

In April 2009, Watershed filed a breach of contract action against Neff in state court. Neff counterclaimed for breach of contract and breach of warranty. *See Watershed Mgmt. LLC v. Neff*, 2012 WL 832829, at *2–3 (Oh. Ct. App. Mar. 8, 2012). Neff had by then sold the property to STEW Farm (and, according to STEW Farm, assigned all of his rights and claims to STEW Farm). *Id.* at *3. The state court granted summary judgment against Neff because he failed to present evidence of any damages. *Id.* Around the same time as Neff filed his counterclaims, STEW Farm moved to intervene, but the state court denied this motion. *Id.*

STEW Farm claims that the waterways were improperly constructed, inspected, and certified. R. 39 (First Am. Compl.) (Page ID #702–21). STEW Farm contends that each defendant violated applicable federal law with respect to its participation in the project. *Id.* Watershed, according to STEW Farm, was a Technical Service Provider ("TSP") under the NRCS, which is directly responsible to the landowner for its work, and NRCS and PCSWCD are responsible for supervising and certifying that the project does not violate federal law. *Id.* ¶ 10 (Page ID #704).

After motions to dismiss and for judgment on the pleadings were filed and briefed, the district court granted the motions to dismiss of all defendants. It reasoned that, as to NRCS, the money damages claim failed because STEW Farm "has not identified a separate source of substantive law which mandates the federal government to compensate a landowner for alleged

damages stemming from the grassed waterway design and construction." R. 49 (Opinion & Order at 10) (Page ID #1008). As to the declaratory relief against the NRCS, the district court concluded that STEW Farm "failed to meet its burden of establishing a waiver of sovereign immunity under which its claims against [NRCS] can be brought" because there are no "clear guidelines" which show that the NRCS actions were not committed to agency discretion by law. *Id.* at 12–13 (Page ID ##1010–11). As to Watershed, the district court concluded that there is no federal cause of action nor do the state claims implicate significant federal issues. *Id.* at 13–14 (Page ID ##1011–12). Similarly, the district court concluded that as to PCSWCD, STEW Farm has alleged only state-law claims that lack a federal cause of action and do not implicate significant federal issues. *Id.* at 14 (Page ID #1012). Moreover, as to PCSWCD, the claims are time barred under Ohio's two-year statute of limitations. *Id.* at 15–16 (Page ID ##1013–14). Finally, the claims against Kohli were dismissed as time barred. *Id.* at 16–17 (Page ID ##1014–16).

This appeal timely followed.

## II. DISCUSSION

### A. Standard of Review

Although the defendants filed motions to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) as well as for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), we review de novo a district court's dismissals under any such motions. *See Cartwright v. Garner*, 751 F.3d 752, 760 (6th Cir. 2014) (Rule 12(b)(1)); *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 596 (6th Cir. 2013) (Rule 12(b)(6)); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (Rule 12(c)). However, "[w]here the district court does not merely analyze the complaint on its face, but instead inquires into the factual predicates for jurisdiction, the decision on the Rule 12(b)(1) motion resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's factual findings for clear error." *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004).

**B. Claims Against NRCS**

STEW Farm brought two claims against NRCS:  a declaratory judgment claim, *see* R. 39 (First Am. Compl. ¶¶ 93–95) (Page ID ##718–19), and a damages claim, *see id.* ¶¶ 88–92 (Page ID ##717–18).

**1. Declaratory Judgment**

STEW Farm asked the district court to declare that NRCS violated its "duties and obligations" owed to STEW Farm under federal law and to order NRCS to "fully comply with [its] obligations under federal law."  *Id.* ¶¶ 94–95 (Page ID #718).  In its briefing, STEW Farm points to the Administrative Procedure Act ("APA") as creating the cause of action which forms the basis for this claim.  Appellant Br. at 13–14.  Specifically, 5 U.S.C. § 702 provides for relief other than money damages and waives sovereign immunity:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.  The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States:  *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance.  Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

*Id.*  Courts, however, cannot review agency actions that are "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Under 5 U.S.C. § 701(a)(2), courts cannot review agency actions where "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Because the burden is on STEW Farm to show the existence of federal jurisdiction for its complaint, STEW Farm must explicitly posit what meaningful statutory standard NRCS has

violated. *Cf. Webster v. Doe*, 486 U.S. 592, 600 (1988) (noting that 5 U.S.C. "§ 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based").

STEW Farm, in its opening brief, claims that NRCS violated 16 U.S.C. § 3842(b)–(e) as well as 16 U.S.C. § 3812a(a). Appellant Br. at 15–17. In its reply brief, STEW Farm does not put forward any other statutes.[2] *See* Reply Br. at 5–10. The cited provisions, however, simply do not provide a meaningful standard against which a court can judge the agency's action. Section 3842(b) simply provides the purpose of the technical assistance authorized. Section 3842(c) states that the Secretary "shall provide technical assistance under this chapter to an eligible participant," but then merely lists three ways this technical assistance can be provided. The Secretary, through a monetary payment under § 3842(c)(3), certainly provided some assistance, and this panel has no standard to review whether this assistance was enough to satisfy § 3842(c). Section 3842(d) is a discretionary provision that states what the Secretary "may" do. Section 3842(e) requires the Secretary to promulgate regulations that,

> to the maximum extent practicable, shall—
>
> > (A) ensure that persons with expertise in the technical aspects of conservation planning, watershed planning, and environmental engineering, including commercial entities, nonprofit entities, State or local governments or agencies, and other Federal agencies, are eligible to become approved providers of the technical assistance;
> >
> > (B) provide national criteria for the certification of third party providers; and
> >
> > (C) approve any unique certification standards established at the State level.

*Id.* STEW Farm acknowledges that the Secretary did promulgate these regulations, but then argues that the Secretary did not follow the regulations.[3] While we could review whether the regulations were promulgated (which STEW Farm acknowledges), we cannot review whether

---

[2]STEW Farm does cite in its briefs a number of regulations created by the Department of Agriculture and argues that NRCS has violated its own regulations. However, STEW Farm submits no case or statutory basis that the APA waives sovereign immunity for judicial review in cases where an agency's own regulations provide the meaningful standard against which to judge the agency's exercise of discretion, and we are unaware of any such authority. Moreover, the enactment of the regulations suggests that the action is committed to agency discretion by law.

[3]STEW Farm provides no authority for its assertion that a review whether an agency violated its own regulations avoids the jurisdictional bar in 5 U.S.C. § 701(a)(2).

the regulations meet the goals stated in (A), (B), & (C) because the "to the maximum extent practicable" language clearly vests discretion with the Secretary.

Finally, § 3812a(a) provides:

(a)  Technical requirements

In connection with the standards and guidelines contained in Natural Resources Conservation Service field office technical guides applicable to the development and use of conservation measures and management practices as part of a conservation system, the Secretary shall ensure that the standards and guidelines permit a person to use a conservation system that--

(1)  is technically and economically feasible;

(2)  is based on local resource conditions and available conservation technology;

(3)  is cost-effective; and

(4)  does not cause undue economic hardship on the person applying the conservation system under the person's conservation plan.

16 U.S.C. § 3812a(a).  STEW Farm does not contend that the Secretary failed to "ensure that the standards and guidelines permit[ted] a person to use a conservation system that" met each of these goals.  Instead, STEW Farm alleges that the actual construction of the grass waterways on its property failed to meet the guidelines and that NRCS violated federal law by certifying that the guidelines were met.  That claim, however, is not cognizable under this section because relying on regulatory guidelines provides no statutory standards for courts to apply.

Thus, we lack a meaningful standard against which to judge NRCS's actions. Consequently, STEW Farm has failed to show that the APA permits this declaratory judgment action against NRCS.

### 2. Damages

In the second claim against NRCS, STEW Farm seeks monetary damages for NRCS's failure to design properly the grass waterways and to supervise their construction.  STEW Farm asserts that the Little Tucker Act, 28 U.S.C. § 1346(a)(2), which waives the federal government's sovereign immunity for claims under $10,000, provides the district court's subject-matter jurisdiction over this claim.  Appellant Br. at 18.

This assertion that jurisdiction is proper under the Little Tucker Act presents a quandary for our court. The Court of Appeals for the Federal Circuit, rather than our court, has exclusive jurisdiction over all appeals "if the jurisdiction of [the district] court was based, in whole or in part, on section 1346 of this title." 28 U.S.C. § 1295(a)(2). Thus, if STEW Farm's damages claim is indeed based on the Little Tucker Act, then the jurisdiction of the district court must be based at least in part on the Little Tucker Act as well, and we would lack jurisdiction to review this appeal. *See First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C. Cir. 1997) ("The presence, or absence, of our appellate jurisdiction thus depends on what occurred in the district court. If the district court's jurisdiction did not rest in whole or in part on the little Tucker Act, we have jurisdiction over the . . . appeal."). We have jurisdiction to determine whether this is a claim under the Little Tucker Act. *See Smith v. Orr*, 855 F.2d 1544, 1547 (Fed. Cir. 1988) ("Congress, pursuant to 28 U.S.C. § 1295, did not remove the power from all other circuits to decide for themselves whether jurisdiction of the district courts in given cases was based on the Little Tucker Act."); *see also Waters v. Rumsfeld*, 320 F.3d 265, 272 n.8 (D.C. Cir. 2003) (concluding that "[§] 1295(a)(2) is inapplicable here, however, in light of our conclusion that the district court's jurisdiction was not properly based on the Little Tucker Act in any part"); *Chandler v. United States Air Force*, 272 F.3d 527, 529 (8th Cir. 2001) (stating that to determine whether a case is brought under the Little Tucker Act, the appellate court "must examine our jurisdiction for ourselves, going behind the plaintiff's and the District Court's characterizations of jurisdiction"); *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) (stating that the court's appellate jurisdiction turns on "whether the Tucker Act or the APA provides the appropriate jurisdictional foundation for this case"); *Kline v. Cisneros*, 76 F.3d 1236, 1237 (D.C. Cir. 1996) (determining that a claim did arise under the Little Tucker Act and recognizing a lack of jurisdiction to proceed further).

The Little Tucker Act provides that "district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims," of a "civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1346(a)(2). The Little Tucker Act does not "'creat[e] substantive rights,'

but '[is] simply [a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law.'" *United States v. Bormes*, 133 S. Ct. 12, 16–17 (2012) (first alteration in original) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)). Thus, the Little Tucker Act does not provide a private right of action, but merely waives sovereign immunity.

Next, we must analyze whether STEW Farm has a private right of action to bring this claim at all. If STEW Farm had no private right of action, then the district court's jurisdiction (or lack thereof) depended on this infirmity and did not rest in whole or in part on the Little Tucker Act. And if the district court's jurisdiction did not depend on the Little Tucker Act, we have jurisdiction to review the dismissal.[4]

"Under the familiar test of *Cort v. Ash*, 422 U.S. 66 (1975), the burden is on [the plaintiff] to demonstrate that Congress intended to make a private remedy available." *Suter v. Artist M.*, 503 U.S. 347, 363 (1992). Thus, STEW Farm must point to some source of substantive federal law that provides a private right of action under which STEW Farm can pursue its damages claim. STEW Farm fails to point to any other source of law for the basis of its claim. STEW Farm does not cite a federal statute, regulation, or constitutional provision that creates a private right of action on which its claim is based.[5]

STEW Farm fails to argue that any of the federal laws it cites creates a private right of action that it can pursue against the government. None of these statutes creates an explicit cause of action against the government for damages caused by the government's failure in carrying

---

[4]Such a conclusion makes practical sense. After all, while the Federal Circuit may have expertise in reviewing suits brought under the Little Tucker Act and while there may be a federal interest in the uniformity of decisions in such cases, the regional courts of appeals handle numerous cases where the subject-matter jurisdiction of the district courts is at issue. Where the dispositive issue in the case has nothing to do with the Little Tucker Act and precedes the determination required by that act—here, whether there is a private right of action for the plaintiff to bring a claim precedes the question whether the United States government has, by virtue of the Little Tucker Act, waived its sovereign immunity against that claim—we have appellate jurisdiction to review the district court's judgment.

[5]Rather, STEW Farm uses generic language regarding violations of federal law. STEW Farm's complaint asserts that NRCS "breached its implied or express obligations under applicable federal law . . . to [STEW Farm] in respect of the design," "proper supervision of the construction," and "certification" of the Waterways. R. 39 (First Am. Compl. ¶¶ 89–91) (Page ID #717). In its briefing, STEW Farm argues that NRCS "represented and warranted to [STEW Farm]'s predecessor in interest that the Waterways were designed and constructed in accordance with the applicable Federal Laws." Appellant Br. at 18. But STEW Farm never asserts which federal law provides a private right of action under which STEW Farm can recover damages from NRCS.

them out. Moreover, none creates a cause of action which satisfies the "fair interpretation" standard articulated in *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003): "[A] statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 472 (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). Therefore, STEW Farm fails to show that Congress has provided a cause of action against the United States under which STEW Farm can pursue its claim. *Cf. United States v. Testan*, 424 U.S. 392, 399 (1976) ("[E]xcept as Congress has consented to a cause of action against the United States, 'there is no jurisdiction in the Court of Claims more than in any other court to entertain suits against the United States.'" (quoting *United States v. Sherwood*, 312 U.S. 584, 587–88 (1941))).

This failure by STEW Farm not only is fatal to its damages claim against NRCS, but also ensures that the district court's jurisdiction did not rest in whole or in part on the Little Tucker Act; therefore, we have jurisdiction to review the dismissal. *See Smith*, 855 F.2d at 1549 n.14 (stating as the practice of every circuit: "a regional circuit, when faced with the issue whether it has jurisdiction over the merits of the appeal before it, first will determine for itself whether the district court's jurisdiction was based on the Little Tucker Act, and then will act appropriately based on that determination"). The district court properly dismissed STEW Farm's damages claim against NRCS.

## C. Cause of Action Against Watershed and PCSWCD

STEW Farm argues that the federal district court has jurisdiction over its claims against Watershed and PCSWCD because the claims arise under federal law. Appellant Br. at 19 (citing 28 U.S.C. § 1331). "'[T]he 'arising under' gateway into federal court in fact has two distinct portals': 1) 'litigants whose causes of action are created by federal law,' and 2) 'state-law claims that implicate significant federal issues.'" *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012) (quoting *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006)). STEW Farm does not argue that it is bringing a state-law claim that implicates significant federal issues. Consequently, we must determine only whether federal law creates a private right of action that STEW Farm can pursue. STEW Farm contends that there is an

express right to sue under 7 C.F.R. § 652.4(d), or, in the alternative, that Congress has created an implied cause of action under Title XII of the Food Security Act of 1985, 16 U.S.C. § 3801 *et seq.* Appellant Br. at 19–20.[6]

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Moreover, the Supreme Court has dismissed an argument that a private right of action can be found in a regulation enacted pursuant to a statute. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979) ("It suffices to say, however, that the language of the statute and not the rules must control [whether federal courts should recognize an implied damages remedy]."). Congress through statutes, not the executive branch through regulations, defines the subject-matter jurisdiction of federal courts. We know of no authority otherwise that suggests a private right of action can be created expressly or impliedly by a federal regulation.

Where there is no express right to sue, courts analyze whether there is an implied right to sue. *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 628 (6th Cir. 2010).

> [T]he Supreme Court established a four-factor test to determine whether a federal statute creates an implied right to sue: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right to sue; (3) whether a private right to sue would be consistent with the purposes of the statute; and (4) whether the right to sue is one not traditionally relegated to the states.

*Id.* (citing *Cort*, 422 U.S. at 78). When applying this test, congressional intent to create a private cause of action and remedy is the dispositive factor. *Id.* "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights

---

[6]While we will reach the question whether Congress has created an implied cause of action under Title XII of the Food Security Act of 1985, we note that STEW Farm's main contention is that 7 C.F.R. § 652.4(d) provides the cause of action. In fact, at oral argument, counsel for STEW Farm stated: "It really boils down then to whether or not we have applicable federal regulations that would provide a cause of action."

on a particular class of persons.'" *Alexander*, 532 U.S. at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

STEW Farm contends that 7 C.F.R. § 652.4(d) creates an express right to sue. According to STEW Farm, this regulation established liability which "is consistent with the Secretary's responsibility to ensure, to the maximum extent practicable, that TSPs provide consistent, science-based technical assistance that assures site-specific conservation objectives are met, and that they do not cause undue economic hardship to farm owners." Appellant Br. at 21–22. This contention, however, suffers not only from the fatal flaw that the Secretary of Agriculture cannot create private rights of action, but also that such a right of action would mean federal courts that lack the requisite expertise, rather than the Secretary, would be responsible for ensuring that the conservation objectives are met without undue economic hardship to farm owners.

The regulation STEW Farm relies almost entirely on states that "TSPs[7] are responsible for the technical services provided, including any costs, damages, claims, liabilities, and judgments arising from past, present, and future negligent or wrongful acts or omissions of the TSP in connection with the technical service provided." 7 C.F.R. § 652.4(d). No court has found that this regulation creates an express right of action. Rather than creating a cause of action, this regulation appears to declare that NRCS is not taking on any liabilities created by TSPs simply because it supervises the services they provide. More importantly, the regulation was not "created by Congress." *Alexander*, 532 U.S. at 286. Consequently, it cannot have created a private right of action to enforce federal law. *See id.*; *Touche Ross & Co.*, 442 U.S. at 577 n.18. A regulation cannot create an express right of action, and 7 C.F.R. § 652.4(d) certainly does not do so. There is no express right of action to pursue this claim against Watershed or PCSWCD.

STEW Farm claims that the "Conservation Program Statutes"[8] create an implied right to sue." Appellant Br. at 20. While STEW Farm's specific reasoning is far from clear, it appears

---

[7]TSPs are Technical Service Providers. STEW Farm claims that Watershed is a TSP, which Watershed denies.

[8]STEW Farm defines the Conservation Program Statutes as both Title XII of the Food Security Act of 1985, 16 U.S.C. § 3801 *et seq.*, and federal regulations enacted thereunder. Appellant Br. at 20.

that STEW Farm points to 16 U.S.C. § 3842(e)(3), which provides that the Secretary must promulgate regulations, and, in doing so:

> "the Secretary, to the maximum extent practicable, shall—
>
> > (A) ensure that persons with expertise in the technical aspects of conservation planning, watershed planning, and environmental engineering, including commercial entities, nonprofit entities, State or local governments or agencies, and other Federal agencies, are eligible to become approved providers of the technical assistance;
> >
> > (B) provide national criteria for the certification of third party providers; and
> >
> > (C) approve any unique certification standards established at the State level.

16 U.S.C. § 3842(e)(3). Nothing in this passage cited by STEW Farm, or in any other cited statutory language, suggests that Congress intended to provide a federal, private cause of action to a farm owner where a provider of technical assistance fails in its role and damages the farm owner's property. In fact, the statute does not focus on protecting or benefiting a special class. Rather than limiting certifications to providers with the requisite technical expertise, the statute calls on the Secretary to ensure that any technical expert is approved under a uniform standard. *See id.* Thus, the statute does not focus on the individuals protected, thereby further suggesting no intent on the part of Congress to create a private right of action. *See Alexander*, 532 U.S. at 289 (quoting *Sierra Club*, 451 U.S. at 294). Moreover, a private right to sue simply has no relation to the statutory purpose—mandating that a wide array of technical service providers are certified. 16 U.S.C. § 3842(e)(1) ("The purpose of the third-party provider program is to increase the availability and range of technical expertise available to eligible participants to plan and implement conservation measures."). *See Traverse Bay Area Intermediate Sch. Dist.*, 615 F.3d at 628 (citing *Cort*, 422 U.S. at 78). Finally, the right to sue a contractor for substandard work is traditionally relegated to the states as shown by Neff's counterclaims in the state action and STEW Farm's attempt to intervene in that action. *Id.* (citing *Cort*, 422 U.S. at 78). We conclude that Congress had no intent to create a private right of action. Because congressional intent is dispositive, *see id.*, we conclude that the cited statutes create no private right of action.

This conclusion is sensible when the plain language of the statute is considered. Rather than putting the onus on the courts to ensure that providers of technical assistance satisfy federal standards, the statute clearly places the responsibility on the Secretary to ensure to the maximum extent practicable that providers of technical expertise are properly certified and supervised. Therefore, there is no implied right of action permitting STEW Farm to pursue this claim against Watershed or PCSWCD. The district court correctly dismissed the claims against Watershed and PCSWCD.

**D. Remaining State Law Claims**

Along with the federal claims, STEW Farm brought state-law claims in its complaint. *See* R. 39 (First Am. Compl. ¶¶ 73–87) (Page ID ##715–17). The district court found that all of STEW Farm's claims are simply state tort-law claims. *See* R. 49 (Opinion & Order at 14) (Page ID #1012). Because the absence of a private right of action means the district court lacked subject-matter jurisdiction, *see Care Choices HMO v. Engstrom*, 330 F.3d 786, 791 (6th Cir. 2003), the district court's dismissal of the state law claims is without prejudice. *See, e.g.*, *Patterson v. State Bureau of Investigation*, 92 F. App'x 38, at *1 (4th Cir. 2004).

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.