**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0399n.06

**No. 18-2110**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ABDOLSALAM MOHAMED HUSSEIN; TAHANI )
HUSSEIN AHMED ABDULRAB, )
)
    Plaintiffs-Appellants, )
)
    v. )
)
R. STEPHEN BEECROFT; UNITED STATES )
STATE DEPARTMENT, )
)
    Defendants-Appellees. )
)

**FILED**
Aug 02, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

BEFORE: ROGERS, GRIFFIN, and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs appeal the district court's dismissal of their petition for a writ of mandamus and denial of their motion to amend their petition. Because we agree with the district court that plaintiffs' original claims were moot and their motion to amend was futile, we affirm.

I.

A.

The Immigration and Nationality Act allows individuals to apply for entry to the United States if they are an "immediate relative" of a United States citizen. *See* 8 U.S.C. § 1151(b)(2)(A)(i). "[A]ny citizen of the United States claiming that an alien is entitled to . . . immediate relative status under section 1151(b)(2)(A)(i) . . . may file a petition with the Attorney General for such classification." 8 U.S.C. § 1154(a)(1)(A)(i). Like many other requests made of

the government, there is a specific form involved: "A citizen or lawful permanent resident of the United States petitioning . . . for a qualifying relative's classification as an immediate relative . . . must file a Form I-130, Petition for Alien Relative." 8 C.F.R. § 204.1(a)(1). A petitioner must file the form with the United States Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security (DHS). 8 C.F.R. § 204.1(b); 8 C.F.R. § 1.1.

"After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative[,] . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status." 8 U.S.C. § 1154(b). Then, "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of [the Immigration and Nationality Act] and the implementing regulations," the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a).

Section 1201(g) of the Act directs that no visa may issue if the applicant is ineligible under 8 U.S.C. § 1182 (listing classes of ineligible aliens), the visa application does not comply with applicable statutes or regulations, or the consular officer "has reason to believe" that the alien applicant is ineligible for a visa "under . . . any other provision of law." 8 U.S.C. § 1201(g). "The consular officer shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS . . . if the officer knows or has reason to believe that . . . the beneficiary is not entitled . . . to the status approved." 22 C.F.R. § 42.43(a). Thus, if a beneficiary is ineligible for "immediate relative" status, or is otherwise ineligible for entry, a consular officer shall reject and return the petition to USCIS. *Id.* Upon return of the petition to USCIS, a USCIS officer "may revoke the approval of that petition upon notice to the petitioner on any ground other

than those specified in § 205.1 when the necessity for the revocation comes to the attention of [USCIS]." 8 C.F.R. § 205.2(a). And the Supreme Court has held that such decisions are unreviewable by the courts so long as the counselor officer's decision was made "on the basis of a facially legitimate and bona fide reason." *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972).

B.

Plaintiffs Abdolsalam Mohamed Hussein (Hussein) and Tahani Hussein Ahmed Abdulrab (Abdulrab) purport to be married since 1993. Hussein is a United States citizen, and Abdulrab is a Yemeni citizen. In 2012, Hussein filed a Form I-130 petition on behalf of Abdulrab to get her "immediate relative" status and bring her to the United States. The government initially approved the petition in June of 2013.

Abdulrab then applied multiple times for an immigrant visa and attended corresponding application interviews at the U.S. Embassy in Cairo, Egypt. At one such interview, the consular officer noted that plaintiffs' 1993 marriage document "appear[s] altered" and that Hussein's 1996 passport application stated he was not married at that time. Because of these red flags, the consular officer concluded that "the 1993 marriage is suspicious." To contemporaneously confirm plaintiffs' marital relationship, the consular officer recommended that Abdulrab submit DNA testing from herself, Hussein, and her oldest son, who was born in 1994—approximately one year after plaintiffs' purported marriage. The consular officer also contacted Hussein and told him the same—DNA testing on their eldest son was needed to "corroborat[e] . . . the marriage upon which the I-130 petition was based." Because of the questions surrounding the marriage, the consular officer refused to issue Abdulrab a visa, citing 8 U.S.C. § 1201(g), and waited for confirming DNA results. The consular officer eventually determined—based on the interviews and information provided in the visa applications—that Abdulrab had failed to establish a legal marriage between

herself and Hussein. Therefore, on November 14, 2017, the consular officer designated the I-130 petition for return to USCIS "for reconsideration and possible revocation." The following day, the U.S. Embassy in Cairo sent the I-130 petition to the National Visa Center with the recommendation that the initial approval be revoked.

In February of 2018, plaintiffs submitted to the Cairo Embassy a DNA test of themselves and their younger son, Ibraheem Hussein (born in 2011), which showed "a 99% chance of paternity between [Hussein], child Ibraheem, and [Abdulrab]." Plaintiffs, however, never submitted DNA evidence related to their oldest son (born in 1994). The petition is currently waiting for re-adjudication at the California Service Center, an arm of USCIS. The California Service Center has no statutory- or regulatory-mandated timelines for re-adjudicating returned petitions, and simply processes them in the order received and when they have the resources to do so.

C.

While the visa dispute was ongoing, plaintiffs filed this petition for a writ of mandamus naming R. Stephen Beecroft, U.S. Ambassador to Egypt, and the United States Department of State as defendants. Plaintiffs alleged that Abdulrab's visa application remains in "administrative processing," and defendants never formally adjudicated her application despite their legal duty to do so. Defendants moved to dismiss for lack of subject-matter jurisdiction, arguing that plaintiffs' claims were mooted by the consular officer's denials of Abdulrab's visa requests. While that motion was pending, plaintiffs filed a motion to amend their petition to add Secretary of State Rex Tillerson, USCIS, USCIS Director Lee Cissna, the Department of Homeland Security, and Secretary of Homeland Security Kirstjen Nielsen as defendants. In a comprehensive opinion, the district court granted defendants' motion to dismiss because plaintiffs' claim were moot and denied plaintiffs' motion to amend their petition because amendment would be futile.

II.

Typically, we review de novo a district court's dismissal of an action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 558 (6th Cir. 2014). But when "the district court does not merely analyze the [petition] on its face, [and] instead inquires into the factual predicates for jurisdiction, the decision . . . resolves a 'factual' challenge rather than a 'facial' challenge, and we review the district court's factual findings for clear error." *Id.* at 558–59 (quoting *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004)).

We ordinarily review the denial of a motion for leave to amend a complaint for an abuse of discretion. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). But when a district court denies that motion because it would have been futile, this denial is a purely legal conclusion and we review de novo. *Id.*

III.

Plaintiffs raise two separate issues on appeal: (1) whether the district court erred in concluding that their claims were moot; and (2) whether the district court erred in denying plaintiffs' proposed amendment to their petition as futile. We address each in turn.

A.

Plaintiffs first contend that the district court erred in dismissing their petition for a writ of mandamus on mootness grounds. We disagree.

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1; *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). And for a federal court to have jurisdiction a plaintiff must have, at a minimum, constitutional standing to bring the suit. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d

598, 607 (6th Cir. 2007). This constitutional standing has three elements—a plaintiff must (1) have suffered an injury in fact, (2) demonstrate causation, and (3) prove a likelihood that a favorable decision by the court could redress the plaintiff's injury. *Miller v. City of Wickliffe*, 852 F.3d 497, 502–03 (6th Cir. 2017). Standing "must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks omitted).

Mandamus relief is available only when three requirements are met: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011) (internal quotation marks omitted). The defendant has a clear duty when the action that the plaintiff seeks to compel is not discretionary. *Id.*

Plaintiffs' mandamus claim is moot because the government fully discharged its clear duty to adjudicate Abdulrab's visa application. As the district court found, the unrebutted evidence showed that Abdulrab was denied a visa multiple times because the consular officer determined she failed to prove she was an "immediate relative" of Hussein. Defendants presented a signed affidavit of Department of State attorney Ellen Eiseman, who averred to the contents of Abdulrab's visa file in the database, which showed that the consular officer cited § 1201(g) of the Act each time the consular officer denied Abdulrab's application. *See* 8 U.S.C. § 1201(g) ("No visa or other documentation shall be issued to an alien if . . . the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of

this title, or any other provision of law[.]"). Eiseman also noted that Abdulrab's various visa applications were denied for failure to prove she was married to Hussein. Because plaintiffs' claims became moot the moment the consular officer denied Abdulrab's visa petitions for failure to prove a marital relationship with Hussein, the district court did not clearly err in determining that defendants had completed the actions originally sought in plaintiffs' petition for mandamus.

Plaintiffs' arguments to the contrary are unavailing.

Plaintiffs first challenge the district court's conclusion by attacking the consular officer's conclusion that Hussein and Abdulrab were not married. They argue that evidence that the two "were wed in Yemen, a Muslim country known to have harsh and unforgiving punishment for extramarital sexual relations, the several children the couple have together, and a litany of other evidence submitted during the course of the immigrant visa process," supports the conclusion that they were validly married in 1993. But these arguments fall outside of the narrow scope of review the Supreme Court has determined is permissible in such consular-determination cases. As the Court held in *Kleindienst v. Mandel*, as long as the consular officer's decision was made "on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification" against the constitutional interests of citizens the visa denial might implicate. 408 U.S. 753, 770 (1972); *see also Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring in the judgment) (quoting *Kleindienst*, 408 U.S. at 770). The district court was correct that it could not review the consular officer's decision under *Kleindienst* and its progeny.

Next, plaintiffs argue that the consular's office has not returned the petition to DHS, and that this failure constitutes a denial of due process of law. Assuming that procedural due process even applies in this context, *see Din*, 135 S. Ct. at 2136–38 (plurality op.), plaintiffs' contention

contradicts the record below. An affidavit from Christine J. Sung, an employee of the California

Service Center of USCIS, itself a subsidiary of DHS, notes that the petition has been returned to

the California Service Center, where it is awaiting re-adjudication.[1] And given that defendants

fully discharged their duties under the law, there was simply nothing else the district court could

order defendants to do—the case is moot. *See Demis v. Sniezek*, 558 F.3d 508, 513 (6th Cir. 2009).

Thus, the district court did not clearly err in dismissing the petition for lack of jurisdiction.

B.

Finally, Plaintiffs contend that the district court erred in denying their motion to amend

their petition to add additional defendants. Again, we disagree.

Generally, a court should freely give the parties leave to amend their pleadings "when

justice so requires." Fed. R. Civ. P. 15(a)(2). But a court need not grant leave to amend when that

amendment would be futile. *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017). "A proposed

amendment is futile where it would not withstand a motion to dismiss under Fed. R. Civ. P.

12(b)(6) for failure to state a claim." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir.

2015).

The district court correctly denied plaintiffs' motion to amend their petition. Plaintiffs

admit that the petition has been returned to USCIS/DHS where it is waiting its turn for re-

adjudication. Regarding the original defendants (Ambassador Beecroft and the Department of

State), the amended complaint does no better at avoiding mootness for the reasons discussed

above. *See supra*, § III.A.

---

[1]Plaintiffs have essentially admitted as much both below and before this court given the substance of their motion to amend the petition to add the DHS et al. defendants. In their motion plaintiffs asserted that the additional defendants needed to be added to the suit because "[d]efendants have failed to adjudicate [p]laintiff's Immigrant Visa and instead sent [p]laintiffs' Form I-130, Petition for Alien Relative back to USCIS and/or DHS for further consideration."

And for the newly added defendants, the amended complaint alleges no plausible facts that USCIS, DHS, or the others have violated any clear legal duty, or unreasonably delayed the adjudication of Abdulrab's eligibility for a visa. Instead, it relies on "bare allegations that the defendants violated the law," *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013), which are insufficient to withstand a Rule 12(b)(6) motion.

In this regard, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is analogous. There the plaintiff's complaint asserted that federal officials instituted a policy of detaining Arab Muslim men on account of their religion, race, or national origin, and tried to support his burden of showing the plausibility of his claims by pointing to the "thousands" of Arab Muslim men confined after September 11. *Id*. at 695. But the Court still affirmed dismissal of his complaint because there was another, obvious explanation for the arrests: "The September 11 attacks were perpetrated by 19 Arab Muslim hijackers . . . [so it] should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims." *Id*. at 682. Therefore, the plaintiff in *Iqbal* failed to meet his burden of alleging sufficient facts to state a plausible claim for relief. *Id*. at 680–83.

The amended complaint here similarly fails because it does not plead sufficient factual matter to raise a plausible inference of wrongdoing. *Id*. at 678. The amended complaint alleges that "[s]ince the Form I-130, Petition for Alien Relative was returned to USCIS by the U.S. Embassy in Cairo, USCIS has not completed its reconsideration," "[d]efendants Cissna and Nielsen ha[ve] unreasonably delayed and withheld a mandatory entitlement," and the injuries suffered by Hussein and Abdulrab are "caused by [d]efendants' willful failure to adjudicate [p]laintiffs' Form I-130, Petition for Alien Relative and Immigrant Visa Application, and issue the

immigrant visa to [p]laintiff Abdulrab, as is their duty." Furthermore, the complaint alleges that all defendants "have willfully and unreasonably delayed and refused to perform their clear, non-discretionary duties" requiring mandamus relief. Similar broad assertions pepper the rest of the complaint. But wholly absent are any *factual allegations* that defendants have refused to perform nondiscretionary duties, unreasonably delayed in doing so, denied due process to plaintiffs, or otherwise caused plaintiffs' injury.

Plaintiffs' nonspecific allegations of wrongdoing aside, there is another obvious explanation for the delay in re-adjudicating Abdulrab's visa application—the general backlog of re-adjudications in front of USCIS at any given time. The Sung affidavit notes that "there is no statutory or regulatory mandated timeframe for reopening and re-adjudicating these cases," and they "are processed when there is capacity and resources to do so, and in the order received." It also notes that the California Service Center of USCIS "had approximately 8,000 pending consular return cases" as of January 25, 2018, with a staff of only fifteen immigration officers to adjudicate them. A delay of less than two years by itself, given the limited resources and corresponding demands on our immigration offices, does not establish a plausible case for mandamus or any other relief sought by plaintiffs. And plaintiffs cannot jump the line by simply requesting mandamus or other relief. *See, e.g.*, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (refusing to grant relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain" (internal quotation marks and brackets omitted)). In short, plaintiffs have failed to establish any plausible basis by which they could establish that the extraordinary remedies they seek are warranted. *See Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (noting that issuance

of a writ of a mandamus "is a drastic and extraordinary remedy reserved for really extraordinary

causes" (internal quotation marks and citation omitted)).

IV.

For these reasons, we affirm the judgment of the district court.